# Richmond.

GATES & SON CO. v. CITY OF RICHMOND.

March 9, 1905.

Absent, Cardwell, J.

1. OBSTRUCTING CITY STREET—*Ordinance—Temporary Obstruction.*—A city ordinance which imposes a fine upon any person who shall place any portico, porch, door, window, step, fence, or other projection which shall project into any street of the city, or who shall continue such an obstruction after notice to remove it, is aimed at permanent obstructions, and does not apply to temporarily putting a skid across a sidewalk to unload goods from a wagon in the street into a merchant's storeroom.

2. PENAL STATUTES—*How Construed—Like Words—Specific Enumeration—General Words.*—Penal statutes and ordinances are to be construed strictly, and a man is not to be punished unless he is plainly within their language. There are no constructive offenses. In arriving at a proper construction of a statute, or ordinance, the meaning of a word or phrase may be ascertained by reference to other words and phrases with which it is associated, and a specific enumeration of words or objects, as a rule, controls general words which follow, and limit them in their operation to others of like kind.

Error to a judgment of the Hustings Court of the city of Richmond, affirming a judgment of the Police Justice of said city, imposing a fine on the plaintiff in error for violating a city ordinance.

*Reversed.*

The opinion states the case.

*George Bryan,* for the plaintiff in error.

*H. R. Pollard,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, a corporation, whose place of business fronts on Fourteenth street in the city of Richmond, was fined by a police justice for the alleged violation of an ordinance of the city in obstructing said street.

The obstruction complained of was occasioned by the use of a movable "gang-plank," or "skid," a contrivance composed of two parallel pieces of timber about twelve feet long and twelve inches apart, sheathed with iron, and held together by wooden cross-pieces. The skid was extended from the front door of the storehouse across the sidewalk to delivery wagons in the street, and the goods of the company were carried over the skid to the wagons on hand-trucks.

Upon appeal to the Hustings Court of the city, the judgment of the police justice was affirmed, and the case is here on writ of error to the judgment of affirmance.

The sole question for determination, therefore, is whether the above mentioned facts, of which there is no denial, constitute a violation of the ordinance in question.

The ordinance is as follows: "No person shall construct or place, or cause to be constructed or placed, any portico, porch, door, window, step, fence, or other projection which shall project into any street, or any gate which shall open outside over any sidewalk, under a penalty of not less than five nor more than fifty dollars for each offense, and a like penalty for every day that the said portico, porch, door, window, step, gate, fence, or other projection shall be continued as aforesaid after notice to remove the same. Wherever in any part of said city a street

has been or shall hereafter be encroached upon or obstructed by a fence or any inclosure, or by any building or any part thereof, the owner or owners thereof shall remove the same to the proper line of said street when ordered by the Committee on Streets to do so. If such removal be not made within twenty days after notice of such order, the owner or owners thereof shall be liable to a fine of not less than ten nor more than one hundred dollars; each day's failure to be a separate offense."

This is a penal ordinance, and is, therefore, to be construed strictly. It is not to be extended by implication, and must be limited in its application to cases clearly described by the language employed. The books abound with cases illustrating this principle, which is of universal application, except in particular instances in which the doctrine has been modified by statute. *Fox's admr.* v. *Commonwealth*, 16 Gratt. 1; *Harris* v. *Commonwealth*, 81 Va. 240, 59 Am. Rep. 666; *Street* v. *Broaddus*, 96 Va. 825, 32 S. E. 466.

In *United States* v. *Wiltberger*, 5 Wheat. 76, 5 L. Ed. 37, Marshall, C. J., observes: "The rule that penal laws are to be construed strictly is, perhaps, not much less old than construction itself. It is founded in the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not the judicial, department. . . . The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves do not suggest. To determine that a case is within the intention of a statute its language must authorize us to say so.

"It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated

in the statute, because it is of kindred character with those which are enumerated."

"There can be no constructive offenses, and before a man can be punished, his case must be plainly and unmistakably within the statute." Chief Justice Fuller, in *U. S.* v. *Lacher*, 134 U. S. 624, 33 L. Ed. 1080, 10 Sup. Ct. 625.

These and many other cases which could be cited to the same effect, tend to illustrate the jealousy with which courts regard any substantial departure from this time-tested canon of construction. Its violation involves a most dangerous innovation, and places persons accused of crime at the mercy and arbitrary discretion of the judge who may chance to preside in the particular case.

There are two other kindred principles of construction to be considered in arriving at a correct interpretation of this ordinance, namely: that of *noscitur a sociis*, and *ejusdem generis*.

The former rule is succinctly stated as follows: "It is a fundamental principle in the construction of statutes that the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated. Language though apparently general, may be limited in its operation or effect, where it may be gathered from the intent and purpose of the statute that it was designed to apply only to certain persons or things, or was to operate only under certain conditions." 26 Am. & Eng. Enc. Law, p. 608; citing among other cases *Orange & Alex. R. Co.* v. *Alexandria*, 17 Gratt. 176.

The rationale of the principle of *ejusdem generis*, seems to be, that if the legislature had intended the general words to apply, uninfluenced by the preceding particular words and without restriction, it would in the first instance have employed a compendious word to express its purpose. *Rex* v. *Wallis*, 5

Tenn. R. 375. The rule is illustrated and applied in the comparatively recent case of *American Manganese Co.* v. *Va. Manganese Co.,* 91 Va. 272, 21 S. E. 466, where this court, in construing section 3299 of the Code, with respect to special pleas of setoff, held, that the language, "or any other matter," occurring in a statute which in part reads: "or any other matter as would entitle him (the defendant) either to recover damages at law from the plaintiff . . . or to relief in equity, in whole or in part, against the obligation of the contract," is restricted to the preceding enumerated defenses and that no setoff can be relied on by the defendant that does not grow out of the original contract. The court says: "One of these rules of construction is that general words may be limited to the same genus or class as the specific words which precede them. In Sutherland on Statutory Constr. (section 268) it is said that where there are general words following particular and specific words, the former must be confined to things of the same kind.' In Broom's Legal Maxims (side page 651) the rule is laid down as follows: 'Where a particular class (of persons or things) is spoken of, and general words follow, the class first mentioned is to be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class; the effect of general words, where they follow particular words, being thus restricted.' Sedgwick, in his work on Construction of Statutes (page 361) says: 'Where general words follow particular words, the rule is to construe the former as applicable to things or persons particularly mentioned.' The decisions of the courts fully sustain the textwriters, that this is the true rule of construction in such cases, subject to certain limitations not necessary to be mentioned here." *Lynchburg* v. *N. & W. R. Co.,* 80 Va. 237; *C. & O. Ry. Co.* v. *Bank,* 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449.

"In construing penal statutes the legislative intent 'is, in

Opinion.

most cases, to be found by giving to the words the meaning in which they are used in ordinary speech.' " *Sarlls* v. *U. S.,* 152 U. S. 574, 38 L. E. 556, 14 Sup. Ct. 720.

Applying the foregoing well-settled principles to the case in judgment, it is quite apparent that the offense charged is not embraced by the provisions of the ordinance under consideration. The ordinance is plainly intended to apply to obstructions and encroachments on the streets of a permanent character, and cannot without unwarranted enlargement of the ordinary scope and meaning of the language used, be made to embrace temporary obstructions such as are caused by the use of skids and similar appliances employed in loading and unloading wagons.

If in the judgment of the city council the use made of the streets in this instance amounts to an undue interference with the rights of the public, the evil can be remedied by appropriate legislation. But the courts must construe the ordinance as they find it, and cannot enlarge its operation to meet the exigencies of particular cases.

It follows from these views that the judgment complained of must be reversed, and the case remanded for further proceedings.

*Reversed.*