# Richmond

ROCKINGHAM CO-OPERATIVE FARM BUREAU, INC. V.
CITY OF HARRISONBURG.

October 7, 1938.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*George S. Aldhizer, II, George W. Layman, John C. Goddin* and *J. M. Perry,* for the plaintiff in error.

*S. D. Timberlake, Jr.,* and *D. Wampler Earman,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error filed its petition under the statute to be relieved of a city license tax which had been assessed against it by the Commissioner of Revenue for the city of Harrisonburg. The tax, computed to be $1,302.05, was imposed for the year 1937.

The case was heard by the circuit court and the petition for relief was denied.

The plaintiff in error, a corporation, has been since its organization conducting a business ostensibly as authorized by the Virginia Co-Operative Marketing Act, Code, section 1265, subsections 1-36. It has had its principal office and place of business in the city of Harrisonburg. In its petition for relief it is claimed that because of the provisions of subsection 30 of said act it was exempt from all license taxes except an annual license fee of $10, which had already been paid, and that because of the exemption the city was without power to levy any further license tax.

The city, at the hearing, based its right to make the levy of the license tax on the ground that the plaintiff in error was, and had been for many years, conducting a general merchandise business instead of the authorized and restricted business provided for in the act, and, therefore, had made itself subject to a retail merchant's license tax.

Subsection 30 of the act is as follows: "Each association organized hereunder shall pay an annual license fee of ten

dollars ($10), but shall be exempt from all license taxes, or taxes upon capital stock or reserve funds held by it."

There are two assignments of error. First, it is claimed that the supplies sold by the plaintiff in error, if not expressly authorized under the statute to be sold, were mere incidents to the business of the plaintiff in error, which is selling agricultural products of its members and supplying to them machinery, equipment and supplies as defined in subsections two and four of the statute.

The second assignment of error is that the plaintiff in error is exempt by statute from the imposition of the city license tax in question even though the articles of merchandise sold by it to its members are not within the statutory definition of "supplies."

The record discloses that the plaintiff in error has been selling the following articles of merchandise which the lower court held it was unauthorized to sell under the statute: Gasoline, oil, hardware—heavy and light, salt, dry goods, groceries, crockery, glassware, boots, shoes, toilet articles, fresh fruits, grapes, oranges, galvanized buckets and tubs, dress goods, cottons, men's shirts and hats, women's ready-to-wear clothes, hosiery, candy, cakes, cooking utensils, cosmetics, drugs and patent medicines, pills, aspirin, mineral oils, cough syrup, cathartics, notions, stoves, bicycles, lighting fixtures, washing machines, radios, floor covering, carpets, mattings, roofing, coal, paint, automobile tires and tubes.

The first subsection of the statute is a declaration of policy. It reads as follows: "In order to promote, foster and encourage the intelligent and orderly marketing of agricultural products through co-operation; and to eliminate speculation and waste; and to make the distribution of agricultural products between producer and consumer as direct as can be efficiently done; and to stabilize the marketing of agricultural products; and to obtain these said benefits in the distribution of supplies purchased by agricultural producers, this act is passed."

The second subsection consists of definitions of terms used in the statute. It is in part as follows: "(a) The term 'agricultural products' shall include horticultural, viticultural, forestry, dairy, live stock, poultry, bee, and any other farm products; and the term 'supplies' shall include seed, feed, fertilizer, equipment and other products used in the production of crops and livestock and in the operation of farms and farm houses; * * * ."

It is claimed that the statutory definition of "supplies" just quoted is sufficiently broad to include all the articles of merchandise enumerated in the record as having been sold by the plaintiff in error and to authorize the sale of them in its business.

To hold that the plaintiff in error is authorized by the statute to sell such articles of merchandise under the statutory definition of "supplies" would be tantamount to holding that it is authorized to sell any article of merchandise without limitation. Yet, we know that the legislature intended to limit such co-operative associations in the business they were to do. The declared policy of the legislature expressed in the first subsection quoted above clearly discloses a legislative purpose to limit the business of co-operatives to such activities as have a peculiar connection with agricultural production. The language of the first subsection supports that conclusion.

Subsection four defines the purposes of the associations. It reads as follows: "An association may be organized to engage in any activity in connection with the marketing or selling of the agricultural products of its members, or with the harvesting, preserving, drying, processing, canning, packing, storing, handling, shipping, or utilization thereof, of the manufacturing or marketing of the by-products thereof; or in connection with the manufacturing, selling or supplying to its members of machinery, equipment, or supplies; or in the financing of the above enumerated activities; or in any one or more of the activities specified herein."

The object and purpose of the legislature may be found in the language of subsections one, two and four.

When these subsections are read and construed in the light of the known legislative purpose and in the light of the entire act, it is not difficult to readily arrive at the conclusion of the trial court; namely, that the "supplies" which can be purchased for sale under the authority of the act must be confined to things which have a peculiar connection with agricultural production as defined in subsection 2(a) in contradistinction to the conduct of other businesses.

■■ It is elementary that in searching for the intention of the legislature the court must consider the object of the statute and the purpose to be accomplished. Another general rule applicable here is that in construing a statute the whole body of the act must be examined with a view to arriving at the true intention of each part. All of its parts must be considered so as to make it harmonious. *National Mechanics Bank* v. *Schmelz National Bank,* 136 Va. 33, 116 S. E. 380; *Chesapeake Ferry Co.* v. *Hampton Roads Transp. Co.,* 145 Va. 28, 133 S. E. 561.

■ In construing the word "supplies" we must look to the entire language of the act. The terms "agricultural products" and "supplies" are defined in subsection 2(a). The former means "horticultural, viticultural, forestry, dairy, livestock, poultry, bee and any other farm products." The latter means "seed, feed, fertilizer equipment and other products used in the production of crops and livestock and in the operation of farms and farm houses." The rule of *ejusdem generis* may be applied here. This rule means that when a particular class of persons or things is spoken of in a statute and general words follow, the class first mentioned must be taken as the most comprehensive, and the general words treated as referring to matters *ejusdem generis* with such class. The effect of general words when they follow particular words being thus restricted. *Standard Ice Co.* v. *Lynchburg Diamond Ice Factory,* 129 Va. 521, 106 S. E. 390. A specific enumeration of words or objects, as a rule, controls general words which follow and limits them in their operation to others of like kind. *Gates & Son Co.* v. *Richmond,* 103 Va. 702, 49 S. E. 965.

■ The elementary rules of construction support the conclusion of the trial court.

■ Under the second assignment of error the plaintiff in error claims to be exempt from the payment of the assessed license simply because it is a co-operative association, regardless of the kind of business it may conduct. In other words, it contends that the test is not the kind of business conducted, but rather the fact that it is a co-operative association. This contention is based upon a limited consideration of the statute.

It is clear that the intent of the legislature was to exempt such associations from the payment of any other license tax (other than the $10) only on the business they are authorized by statute to conduct. .

■ The Honorable H. W. Bertram, judge of the trial court, in an excellent opinion clearly expresses his view on the point. He says: "But I am unable to agree with and can find no authority to sustain the contention that regardless of the character of business conducted, an association organized under the Act is exempt from all license taxation. To give such an interpretation to the effect of section 30 quoted, would not only not harmonize with all other provisions of the Act and be in contravention of the rules of construction applied to statutes, but, it seems to me, would be in direct opposition to the clear policy of the Act. It is the authorized business of the association to which the exemption attaches and not to the association as such, independent of the character of business carried on by it. Therefore, if and when an association goes beyond its powers and deals in a class of merchandise not authorized by the Act, it cannot escape assessability and should properly be taxed as a general merchant, to the extent, at least, of its unauthorized sales. As to such sales, the association is doing a business which by law is required to be licensed by the State (sec. 188, Tax Code, Code 1936, Appendix, p. 2451) and on which (under sec. 296, Tax Code, Code 1936, Appendix, p. 2497) any city or town may impose a tax for the privilege of doing, and require a license therefor."

And in concluding the discussion he says: "The legislature had no intention of exempting the association from license taxes, State or city, for the conduct of a business not authorized by the Act and when the fact that such business is carried on is established, assessability is fixed, and such fact may be determined without the necessity of proceedings by *quo warranto.*"

We are in entire accord with the views of the trial court and find no error in its judgment.

*Affirmed.*