# Richmond

SUTTON COMPANY, INCORPORATED v. WISE CONTRACTING COMPANY, INC., AND JAMES LEES AND SONS COMPANY.

January 16, 1956.

Record No. 4449.

Present, All the Justices.

The opinion states the case.

*Christian, Barton, Parker & Boyd* and *Richard H. Catlett, Jr.*, for the appellant.

*Williams, Mullen, Pollard & Rogers* and *Charles S. Glasgow*, for the appellees.

SMITH, J., delivered the opinion of the court.

This suit was instituted by C. W. Tate, a subcontractor, and his assignee, Sutton Company, Incorporated, against Wise Contracting Company, Incorporated, a contractor, and James Lees and Sons Company to enforce a mechanics' lien asserted by the subcontractor against the property of Lees. C. W. Tate will be referred to as Tate; Sutton Company, Incorporated, as Sutton; Wise Contracting Company, Incorporated, as Wise and James Lees and Sons Company as Lees. The case was heard on the bill of complaint as amended, certain special pleas of Wise and Lees and certain stipulations of counsel. The trial court in its final decree sustained the special pleas and dismissed the amended bill. To this decree of dismissal an appeal was granted Sutton, which is the sole appellant here.

In their original bill, Tate and Sutton alleged that on or about May 1, 1953, Tate entered into a contract with Wise that in consideration of $21,920.00 he would perform certain work in and around a spinning mill that Wise had contracted to construct for and on the land of Lees in the town of Glasgow; that to perform his contract, it became necessary for Tate to rent excavating machinery from Sutton and that in order to secure payment of the rental, Tate "made an assignment of the amounts Wise would owe him in the future because of work he was to perform on the said job, which assignment was acknowledged by Lee Paschall, President of Wise Contracting Company, Incorporated, in a letter to Sutton Company, Incorporated, dated May 28, 1953." The bill further alleged that on or about October 16, 1953, Wise made a payment to Sutton in the amount of $6,394.64; that on November 25, 1953, Wise paid Tate $4,306.21 by meeting Tate's payroll; and that there is still due and owing Tate from Wise the sum of $15,328.15, "of which amount the sum of $5,748.16 is due the respondent Sutton Company, Incorporated, assignee of C. W. Tate as is more clearly shown in the itemized account attached hereto and made a part of this Bill." The itemized account of Tate with Sutton shows that the rental of Sutton's machinery by Tate extended from May 21 to November 12, 1953. The bill prayed that the property of Lees be sold to satisfy the claims of Tate and Sutton in the sum of $15,328.15.

In its answer Wise alleged that Tate had defaulted under his subcontract; that certain payments totaling $13,391.18, including a pay-

ment of $6,394.64 to Sutton on account of equipment rentals, had been made by Wise to or on behalf of Tate prior to his default; and that the cost to Wise in completing Tate's work was more than $8,-000.00 in excess of what would have become due Tate if he had fully performed his work. Lees in its answer stated that it was not informed as to the status of affairs between Wise and Tate and asked for proof of the claim asserted.

In addition to their answers, Wise and Lees filed separate special pleas in which they alleged that Tate undertook his contract with Wise without having registered as a contractor under the provisions of Code, §§ 54-113 through 54-145; that the contract was therefore illegal and neither Tate nor his assignee, Sutton, could maintain this suit to enforce the asserted claims arising under the contract.

Subsequent to the filing of these pleas Sutton twice amended its bill, to which Wise and Lees filed answers requesting that their special pleas apply to both the amendments. In the first amendment to the bill, it was alleged that because of reliance on the representations of Wise, Sutton rented excavating equipment to Tate and would not have permitted this equipment to remain on the job to be used by Tate unless assurances to pay for the rental had been received from Wise. Copies of two letters, the first of which was from Tate to Wise dated May 20, 1953,[1] and the second from Wise to Sutton dated May 28,

---

[1] In his letter to the president of Wise dated May 20, 1953, Tate said:

"Reference is made to the work I am performing for your company, on a subcontract basis, in connection with your building construction for James Lees & Sons at Glasgow, Virginia. In order to expedite this work I am purchasing and renting from the Sutton Company, Inc. of Radford and Richmond, Virginia some excavating equipment. The Sutton Company will mail to you a invoice in my name for this rental for which I kindly ask that you mail them payment direct and charge to my account and deducted from payments to be made to me for work performed. The rental schedule established by mutual agreement between Sutton Company, Inc., and myself is as follows:

| | |
|---|---|
| 1—Caterpillar D-8 Tractor with Angledozer Blade Attachment..Monthly | $1,225.00 |
| 1—LeTourneau 8 cubic yard L. S. Scraper....................Monthly | $76.00 |
| 1—Single Drum Sheepsfoot Roller............................Monthly | $424.00 |
| 1—¾ cubic yard Koehring Shovel or Back-hoe................Monthly | $915.00 |

"After first month if equipment is returned, charges are to be made for part of month used. Any invoice submitted by Sutton Company, Inc., for rental payments is to be paid by your company under this agreement upon demand. However, I estimate I will need the equipment listed for approximately two months, about $5,280.00.

＊　　＊　　＊　　＊　　＊　　＊　　＊

CC: Sutton Company, Inc.
　　Richmond, Virginia
　　Radford, Virginia"

1953,[2] were attached to and made a part of this amendment to the bill.

In the second amendment to the bill, Sutton alleged that it believed at the time of the agreement to rent equipment to Tate, the Tate-Wise contract was in all respects valid; that it had no knowledge of the contract's invalidity, if in fact it were invalid; that if in fact Wise had no knowledge of the contract's invalidity it should have known or by the exercise of due diligence could have determined this fact. This amendment also alleged that Wise intended such reliance upon its representations, "as heretofore set out in the Bill to Enforce Mechanics' Liens and the Amended Bill herein filed," that Sutton would rent equipment to Tate; and that because of reliance upon the representations of Wise, Sutton was misled in believing that the contract was in all respects valid.

Counsel for all the parties stipulated that Lees was properly retaining certain sums due Wise in excess of the amounts claimed by Tate and Sutton and that it was willing and able to pay these sums in accordance with the direction of the court. It was further stipulated and agreed among counsel for Wise, Tate and Sutton that Tate undertook the performance of his contract without having registered as a contractor under Code, §§ 54-113 through 54-145, and that neither Wise nor Sutton "were aware of the fact" that Tate was not registered as required by the above statutes "until after C. W. Tate had abandoned his work under the contract alleged in the Bill of Complaint." It was conceded at the bar of this court that since Tate undertook to perform a contract in excess of $20,000, without having

---

[2] In his letter to Sutton dated May 28, 1953, the president of Wise said:

"We are in receipt of a letter from C. W. Tate dated May 20, 1953 with reference to the rental of equipment to be used by Mr. Tate on the construction of the building which we are erecting for James Lees and Sons Company, Glasgow, Virginia. The contents of this letter are satisfactory to us and the payments will be made in accordance therewith out of any funds due Mr. Tate for work done on the above referred to contract.

"Mr. Tate has informed us that he would need certain financial assistance in connection with his payroll and we would expect to see that the employees are paid first, and then we would pay you out of any remaining balance.

"We believe that it would be to your interest, as well as ours, to keep the job going at all times. We are of the opinion that Mr. Tate has sufficient amount in his contract to meet his financial requirements on the job.

"When you render invoices, we will appreciate it if you will send them to Mr. Tate for him to approve same and forward to us for payment.

"It is our desire to cooperate with you in this matter. We trust that the contents of this letter meet with your approval.

    *      *      *      *      *      *      *

cc—Mr. C. W. Tate"

registered as required by Code, §§ 54-113 through 54-145, his contract with Wise is illegal and unenforceable. See *Lasting Products Company* v. *Genovese*, 197 Va. 1, 87 S. E. (2d) 811, and cases there cited. It was likewise conceded that the same result would follow if the amendment of 1954 be applied.

In its brief Sutton thus states the question presented: "The only question of law involved is whether or not the assignee of a void contract which relied on the representations of its assignor's obligor before it would accept the assignment can, subsequent to the assignment, be denied the right to recover from that obligor on whose representations it relied in accepting the assignment, or whether the party representing to the assignee that the contract was valid is to be estopped to deny liability on the grounds that the contract was void and unenforceable."

Since the allegations of fact contained in the special pleas of Wise and Lees are by stipulation admitted to be true, we will examine the pleadings as if on demurrer. Hence, the facts sufficiently alleged in the bill as amended and the reasonable inferences to be drawn therefrom, but not the conclusions of law, must be accepted as true.

Wise contends that Sutton, solely in its capacity as assignee of Tate, has no greater right to enforce the illegal contract made by Tate than Tate himself. In support of its contention, Wise relies primarily on *Bowen Electric Company* v. *Foley*, 194 Va. 92, 72 S. E. (2d) 388, in which it was held that an unregistered contractor did not have the right to recover on its contract nor the right to enforce mechanics' liens against the property on which work had been done; and *State Realty Company* v. *Wood*, 190 Va. 321, 57 S. E. (2d) 102, in which it was held that the assignee of an illegal brokerage contract did not have the right to enforce the contract against the obligor. Sutton does not attack the principles on which these cases were decided. It concedes that as a general rule an assignee can rise to no greater height than his assignor, but contends that here the facts are such as to require that the obligor be estopped to plead the illegality of the assignor's contract as a bar to the claim of the assignee.

The purpose of the statutes requiring registration of certain contractors is to protect the public from inexperienced, unscrupulous, irresponsible, or incompetent contractors, and in particular those who would enter into certain contracts with such contractors. *Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 86 S. E. (2d) 860; *Bowen Elec. Co.* v. *Foley*, *supra*. To effectuate this purpose enforcement of the con-

tract is denied the unregistered contractor, not because of the nature of the transaction but as a penalty for failing to comply with the registration statutes, and the other party to the contract who is innocent of any illegal conduct is permitted to enforce the contract. "This view is based upon the principle that such innocent party is among the class of persons designed to be protected by such statutes, that he is not *in pari delicto* with the unlicensed party, and is therefore entitled to relief. Or, to state the matter another way, to deny relief to the innocent party in such cases would defeat the purpose of the statute and penalize the person intended to be protected thereby." *Cohen* case, *supra*, 196 Va., at page 1162.

The authorities relied on by Sutton deal in the main with the doctrine of equitable estoppel, which is succinctly stated in *Chesapeake and Ohio Railway Company* v. *Walker*, 100 Va. 69, 91, 40 S.E. 633, thus:

"The general rule of equitable estoppel, or as it is frequently called, estoppel *in pais*, is that when one person, by his statements, conduct, action, behavior, concealment or even silence has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and to act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby." See also *Heath* v. *Valentine*, 177 Va. 731, 15 S. E. (2d) 98; *Isaac Eberly Company* v. *Gibson*, 107 Va. 315, 58 S. E. 591; *Cardwell* v. *Kelly*, 95 Va. 570, 28 S. E. 953, 40 L. R. A. 240; *Martin* v. *South Salem Land Company*, 94 Va. 28, 26 S. E. 591; *Stebbins & Lawson* v. *Bruce*, 80 Va. 389; *Pettit* v. *Jennings*, 2 Rob. (41 Va.) 676.

Here there is no basis whatsoever for invoking the principle of equitable estoppel against Lees, because it was a complete stranger to the transactions between Tate, Sutton, and Wise. The sole basis of the claim of estoppel against Wise is that in its letter of May 28, 1953, Wise made certain representations which were relied on by Sutton to its damage. There is no merit in this contention.

When Wise's letter of May 28, 1953 to Sutton is read in connection with Tate's letter of May 20, 1953 to Wise, it is apparent that Sutton had already leased its equipment to Tate before it received the letter from Wise acknowledging the assignment. Therefore, prior to the assignment there was no representation, either true or false, by Wise

on which Sutton could rely in accepting the assignment. In its letter to Wise, Tate referred to the "rental schedule *established* by mutual agreement between Sutton Company, Inc., and myself" and estimated that he would need the equipment "approximately two months, about $5,280," for which he requested that Wise make payment direct to Sutton "from payments to be made to me for work performed." No mention was made or intimated that Wise's acknowledgment of the assignment was intended as a condition precedent to the rental agreement entered into by Tate and Sutton. Furthermore, it appears from the itemized account of Tate with Sutton that the rental of Sutton's equipment began on May 21, 1953, at least a week before the letter from Wise was received. Moreover, in its letter to Sutton, Wise did not make any promise to pay for the rental of the equipment if there were a default by Tate, nor did Wise make any representation that Tate was duly registered and was legally undertaking the work. In its letter Wise merely indicated that the agreement already made between Tate and Sutton was satisfactory to it and that it was willing to pay Sutton "out of any funds due Mr. Tate for work done" after Tate's payroll was met. When the expression of opinion by Wise that Tate had sufficient amount in his contract to meet his financial requirements is read in the light of the whole letter, the only reasonable conclusion to be drawn is that if Tate was due nothing after the payment of his employees then nothing would be due from Wise to Sutton.

As indicated above, it was stipulated by the parties that at the time of the assignment from Tate to Sutton and until Tate abandoned his contract with Wise, neither Wise nor Sutton knew that Tate was not registered as required by law. However, Sutton as well as anyone else dealing with Tate could have ascertained the true facts, and although Tate had no legal right to hold himself out as a qualified contractor, Sutton apparently relied upon his representations rather than upon any statement or representations of Wise. If Wise is denied the right to assert the illegality of the Wise-Tate contract against Tate's assignee, Tate's obligation to his assignee will be satisfied to the injury of one the law was designed to protect. In order to deprive Wise of its rights under the registration statutes it must clearly appear from the record that as between it and Sutton, it caused Sutton's injury. Under the alleged facts and circumstances of this case it does not clearly appear that Wise caused Sutton's injury, and therefore we

hold that Wise is not estopped to assert the invalidity of the Wise-Tate contract against Sutton.

For the reasons stated the decree of the trial court sustaining the special pleas and dismissing the bill of complaint as amended is affirmed.

*Affirmed.*