# Richmond

## Hubert Sellers and Louie Sellers, Trading as Sellers Brothers v. M. J. Bles, Trading as M. J. Bles Construction Company.

April 23, 1956.

Record No. 4445.

Present, All the Justices.

The opinion states the case.

*T. Ryland Dodson* and *Stuart L. Craig* (*Fowler & Dodson* on brief), for the plaintiffs in error.

*Edwin B. Meade* (*Meade, Talbott & Tate* and *Wood & Bauknight* on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

Hubert Sellers and Louis Sellers, trading as Sellers Brothers, hereinafter referred to as plaintiffs, filed a motion for judgment against M. J. Bles, trading as M. J. Bles Construction Company, to recover damages in the amount of $27,774 for the alleged breach of a written contract.

Defendant filed a motion to dismiss upon the ground that the contract sued on was "unlawful and void." He asserted that it was unlawful and unenforceable because plaintiffs' undertaking was in excess of $20,000, and they had not registered with, and qualified before the State Registration Board for Contractors, as general contractors or subcontractors, as required by Code of Virginia, 1950, Chapter 7, Title 54, §§ 54-113 to 54-145, inclusive.

The case was heard by the court on the notice of motion supplemented by a bill of particulars, certain exhibits submitted by council, and the motion to dismiss.

It appeared from the pleadings and exhibits that defendant, as a general contractor, entered into a contract in July, 1953, with the City of Martinsville, Virginia, entitled a "Contract for Projects Numbers 2, 4 and 5, and Specifications for Waterworks Improvements for City of Martinsville." The contract provided that defendant was to clear a reservoir area, construct a dam and spillways, lay pipe lines, and do certain other things incidental to the completion of the whole waterworks improvement plan. Project No. 2 was entitled "Pipe Line;" Project No. 4 "Clearing Reservoir Area;" and Project No. 5 "Earth Fill Dam." The area to be cleared and the work to be done under Project No. 4 was set out as follows:

"Beginning at a line parallel to and 300 ft. upstream above the construction base line of the dam, the contractor shall remove from the entire area to be flooded and a marginal strip approximately 50 ft. beyond the flooded area all trees, saplings, undergrowth, brush

wood, fallen trees, houses, fences, and other perishable material. He shall also burn over all of the area."

It was also provided that "the Contractor may determine for himself the method in which he shall destroy or remove the timber or material to be disposed of and shall have the privilege of clearing the land with bulldozers or similar equipment if found to be more economical than cutting with axes, saws or similar equipment."

In clearing the reservoir area the contractor was allowed to use explosives for blasting, but in handling, using and storing explosives was required to conform to the laws and regulations of the City of Martinsville and the State, and to conduct blasting so as not to endanger persons or property. Strict requirements were prescribed as to adequate sanitary protection to insure cleanliness to the community and to prevent pollution of the water shed, in a manner satisfactory to the State Department of Health, the local Sanitary Officer and Engineer. The specifications only required that the trees be cut a short distance from the ground and the removal of stumps was not involved. No grading was required, no dirt was to be removed; and none of this was done.

Defendant, the general contractor, sublet Project No. 4 to plaintiffs as subcontractors, and the latter undertook the clearing of the reservoir area in accordance with the plans and specifications of that project. The area to be cleared consisted of 225 acres, and plaintiffs were to receive $143 per acre and the timber cut from that acreage.

A few weeks after plaintiffs began work, the Lester Lumber Company, Inc., made claim to the timber, and the parties interested being unable to agree on the ownership of the timber, defendant notified plaintiffs to stop all work and leave the area. Plaintiffs complied with that demand and then instituted their action on April 16, 1954.

The trial court, in a written opinion, held that plaintiffs were subcontractors within the meaning of Chapter 7, Title 54, §§ 54-113 to 54-145, inclusive, Code of Virginia, 1950. It being admitted that they had not registered and qualified as a general contractor or subcontractor under § 54-113(2), and that the cost of the work to be performed by plaintiffs was in excess of $20,000, the court dismissed the action. Upon petition of the plaintiffs, we granted a writ of error.

The issue for determination is: What effect, if any, did the failure of plaintiffs, trading as Sellers Brothers, to register and qualify as a subcontractor under Chapter 7, Title 54, Code of 1950 have on their right to maintain this action? In their brief plaintiffs concede that an

amendment made to § 54-113(2) in 1954, Acts 1954, ch. 428, p. 523[1], is not applicable here.

So much of Chapter 7, Title 54, Code, 1950, as is material and pertinent reads as follows:

§ 54-113(2) " 'General contractor' or 'subcontractor' shall mean any person, firm, association or corporation that for a fixed price, commission, fee or percentage, undertakes to bid upon, or to construct or superintend the construction of, any building, highway, bridge, railway, sewer, pipe line, grading, or any improvement, or structure or part thereof, when the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more; and any person, firm, association or corporation who shall bid upon or engage in constructing or superintending the construction of any structure or any undertaking or improvements or part thereof above mentioned in the State, costing twenty thousand dollars or more, shall be deemed to have engaged in the business of general contracting or subcontracting in this State."

§ 54-128: "It shall be unlawful for any person to engage in, or offer to engage in, general contracting or subcontracting in this State, unless he has been duly licensed and issued a certificate of registration under the provisions of this chapter."

§ 54-129 provides for application for registration, fees, examination and issuance of certificates.

---

[1] "(2) 'General contractor' or 'subcontractor' shall mean any person, firm, association or corporation that for a fixed price, commission, fee or percentage, undertakes to bid upon, *or accepts or offers to accept,** *orders or contracts for performing or superintending*: (a) *any work on or in any building or structure, requiring the use of paint, stone, brick, mortar, wood, cement, structural iron or steel, sheet iron, galvanized iron, metallic piping, tin, lead, or other metal or any other building material;* (b) *any paving, curbing or other work on sidewalks, streets, alleys, or highways, on public or private property, using asphalt, brick, stone, cement, concrete, wood or any composition;* (c) *the excavating of earth, rock, or other material for foundation or any other purpose;* (d) *the construction of any sewer of stone, brick, terra cotta or other material;* (e) *any work involving the erecting, installing, altering or repairing, electric wiring, devices or appliances permanently connected to such wiring; or the erecting, repairing or maintaining of lines for the transmission or distribution of electric light and power;* (f) *any work involving the installing, altering or repairing of any plumbing, steam fitting or other piping,* when the *amount of the bid or* cost of the undertaking, *order, contract* or* subcontract* is twenty thousand dollars or more; and any person, firm, association or corporation who shall bid upon, *accept, offer to accept,* or engage in* *the doing or superintending of any work* above mentioned in the State, costing twenty thousand dollars or more, shall be deemed to have engaged in the business of general contracting or subcontracting in this State."

§ 54-142 makes a violation of the statute punishable as a misdemeanor.

If the contract undertaken by Sellers Brothers brought them within the purview of § 54-113(2), then upon engaging in the work as subcontractors without having obtained the required license and certificate of registration, they committed a misdemeanor, (§§ 54-128 and 54-142), and their contract is unenforceable. *Bowen Electric Co.* v. *Foley*, 194 Va. 92, 72 S. E. 2d 388; *Hancock Co., Inc.* v. *Stephens*, 177 Va. 349, 14 S. E. 2d 332; *Massie, et al.* v. *Dudley, Exec'r*, 173 Va. 42, 3 S. E. 2d 176; *Colbert, etc.* v. *Ashland Construction Co.*, 176 Va. 500, 11 S. E. 2d 612; *Lasting Products Co.* v. *Genovese*, 197 Va. 1, 87 S. E. 2d 811; *Sutton Co., Inc.* v. *Wise Contracting Co., Inc., et al.*, 197 Va. 705, 90 S. E. 2d 805.

Before undertaking to interpret § 54-113(2) to determine if that section includes what plaintiffs contracted to do, we consider the character of the legislation embodied in Chapter 7, Title 54, Code of 1950, of which it is a part.

Chapter 7, Title 54, was enacted in the exercise of the state's police power. Though it has remedial features, yet it imposes restrictions upon a common trade or occupation, and it is in derogation of the common law and must be strictly construed.

"In Virginia the well-settled rule of construction is that even though a statute be remedial, when, at the same time, it is also in derogation of common law, it must be strictly construed." *O'Connor* v. *Smith*, 188 Va. 214, 222, 49 S. E. 2d 310. 17 M. J., Statutes, §§ 68, 69, p. 331.

The act in question is also penal, and for that reason, in applying its penal provision or giving effect to its sanctions, strict construction is required.

"This is a penal ordinance, and is, therefore, to be construed strictly. It is not to be extended by implication, and must be limited in its application to cases clearly described by the language employed. The books abound with cases illustrating this principle, which is of universal application, except in particular instances in which the doctrine has been modified by statute." *Gates & Son Co.* v. *City of Richmond*, 103 Va. 702, 704, 49 S. E. 965. 17 M. J., Statutes, § 67, p. 329.

██ Unless the work that plaintiffs did falls within the letter and the spirit of § 54-113(2), they have committed no criminal offense, and their contract is enforceable. 17 M. J., Statutes, § 67, p. 329.

"There is nothing immoral or contrary to public policy in a construction contract involving $20,000 or more. Neither does the statute (Code, § 54-113 ff.), either expressly or impliedly, forbid such a contract. It merely prohibits unqualified persons—that is those who have not registered or taken out the required license—from entering into such an agreement." *Cohen* v. *Mayflower Corp.,* 196 Va. 1153, 1160, 86 S. E. 2d 860.

Only general contractors and subcontractors as defined by § 54-113(2) are required to take an examination and get a certificate. That section provides that the contractors to whom these statutes are applicable are those who bid upon, construct or superintend the construction of any (1) building, (2) highway, (3) bridge, (4) railway, (5) sewer, (6) pipe line, (7) grading, (8) or any improvement, (9) or structure or part thereof, "when the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more. * * *" It then expressly provides that any person who "shall bid upon or engage in constructing or superintending the construction of any structure or any undertaking or improvements or parts thereof above mentioned * * * shall be deemed to have engaged in the business of general contracting or subcontracting."

It is conceded that neither a general contractor nor a subcontractor is required to take the examination and qualify unless the work that he *personally* bids upon or undertakes amounts to $20,000 or more. We likewise think fair interpretation and application of § 54-113(2) leads to the inevitable conclusion that it is the character of a subcontractor's undertaking and not the character of the general contractor's over-all undertaking that determines whether or not the subcontractor is within the terms of the statute. Consistency and reason negative the idea that the over-all character of the general contractor's work should be determinative of the subcontractor's status. The subcontractor might well agree with the general contractor to perform specified work and not be aware of what was the character of the general contractor's over-all undertaking.

Certainly the work performed by plaintiffs did not come within the specific things which the statute enumerated in defining contractors. What they did must come under the head of "any improvement," numbered (8) above if it be covered by the statute.

The words "improvement" or "any improvement" may have broad meaning when the user intends that they have a wide scope. Webster's New International Dictionary, 2d ed., defines the word

"improvement" as "a valuable addition, or betterment, as a building, clearing, drain, fence, etc., on land."

"The word 'improvement' is a comprehensive term, which includes in its meaning any development whereunder work is done and money expended with reference to the future benefit or enrichment of the premises." *Eppes* v. *Eppes, Exec'x, etc.*, 181 Va. 970, 988, 27 S. E. 2d 164.

However, the word "improvement" may also have a narrow meaning if that is intended. As said in 42 C. J. S., page 416, "The word 'improvement' is a relative and very comprehensive term, whose meaning must be ascertained from the context and the subject matter of the instrument in which it is used." Building a house on a tract of land is making an improvement, and is covered by the statute. Cutting weeds, hauling off rocks, spreading fertilizer, or planting an orchard would each be an improvement, but not the kind covered by the statute.

In § 54-113(2) the words "construct" and "construction," modify and color the enumerated undertakings. They are the dominant and controlling words because all nine undertakings are susceptible of construction. All of the things listed except "any improvement" must be constructed, and their construction is contemplated in § 54-113(2). None but an "improvement" can be accomplished without construction work. An improvement may or may not be susceptible of construction. Whether or not a contemplated improvement is one that will be constructed is wholly dependent upon what type of improvement is contemplated.

The words "any improvement" as they appear in § 54-113(2) follow seven other specified undertakings that must be "constructed." They also immediately precede the words "structure or part thereof." This indicates that the words "any improvement" contemplate undertakings which are susceptible of construction as are the other listed things.

The two canons of construction *noscitur a sociis* and *ejusdem generis* indicate that the general words "any improvement" which follow several specifically enumerated things, all of which are modified by the words "construct" or "construction" were intended to include only undertakings that were to be accomplished through construction.

"The maxim Noscitur a sociis, is frequently discussed in connection with the maxim Ejusdem generis, and under these doctrines, where

there are general words following particular and specific words, the general words must be confined to matters of the same kind as those specified." 66 C. J. S., p. 608. 28 C. J. S., p. 1049; 50 Am. Jur., Statutes, §§ 248, 249, 250, pp. 243-246; *Gates & Son Co.* v. *City of Richmond, supra; State* v. *Western Union Telegraph Co.,* 196 Ala. 570, 72 So. 99; *Nettles* v. *Lichtman,* 228 Ala. 52, 152 So. 450; *Dunham* v. *State,* 140 Fla. 754, 192 So. 324.

"Improvement" is not a word of art having a fixed and definite meaning. It takes color and significance from its surroundings and must be interpreted and given the meaning indicated by its setting. It will be judged by the company it keeps. 50 Am. Jur., Statutes, § 247, p. 241.

The work plaintiffs did, and what they ask to be paid for was clearing the reservoir area. That was the undertaking personal to them, and it was mere manual labor, the work of cutting and removing trees and brush, and nothing more. Not even the stumps of the trees had to be taken out. No grading was contracted to be done. No dirt was contracted to be moved. No construction of any character was involved.

Over the years much land has been cleared, and up to now it has not been considered necessary that one who does that sort of work should first take an examination and get a certificate. The language of a statute which requires one who merely clears "new grounds" to take an examination and get a certificate ought to be clear, certain and specific.

It seems obvious that the people this statute is intended to regulate are those who engage in *construction* work—those who undertake to *construct* the enumerated things, or *construct* things of like character. People who do that kind of work will be required to take an examination to ascertain their qualifications for the performance of their undertaking, *i.e.,* whether they possess the proper skill and are reliable.

In the four cases *Bowen Electric Co.* v. *Foley, supra, Rohanna* v. *Vazzana,* 196 Va. 549, 84 S. E. 2d 440, *Cohen* v. *Mayflower Corp., supra, Sutton Co., Inc.* v. *Wise Contracting Co., Inc., et al., supra,* in which non-compliance by the contractor with Chapter 7, Title 54, Code of 1950, was sought to be invoked as a defense to plaintiff's claim, no issue upon the kind of work done arose for in each instance the work undertaken was construction of one kind or another.

When a subcontractor's agreement merely requires that he cut

down trees and remove or burn the trunks, boughs and twigs, it cannot be fairly said that by doing so he has undertaken "to bid upon, or to construct, or superintendend the construction of * * * any improvement or structure or part thereof * * *," whatever may be the general contractor's undertaking.

The facts are not in dispute and unless what Sellers Brothers contracted to do constitutes a crime under the statutes, their contract is valid. Certainly a fair and reasonable application of §54-113(2) to the facts of this case under the principles of construction and interpretation applicable to this statute would demand a finding that their undertaking was not within the letter or spirit of the penal provision of the statute.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

SPRATLEY and SMITH, JJ., dissenting.

SPRATLEY, J., dissenting.

I would affirm the judgment of the trial court, basing affirmance upon what we said in *Bowen Electric Company* v. *Foley*, 194 Va. 92, 72 S. E. 2d 388, and the line of cases applying the statute involved. In those cases we repeatedly stated the purpose and design of the legislature in enacting the statute. We recognized the hardships which may result from its enforcement; but we nevertheless applied its provisions without attempting to resort to a subtlety of reasoning and expression in the effort to find some ambiguity, which might relieve an unregistered contractor from the penalties of the statute.

In *Bowen Electric Company* v. *Foley, supra,* we critically discussed the provisions of Chapter 7, Title 54, Code 1950, reviewed the cases involving that Act and other cognate acts, and made the following statements:

"The statute is designed to protect the public from inexperienced, unscrupulous, irresponsible, or incompetent contractors and to effectuate this purpose it requires a demonstration of ability, character, and financial responsibility as well as a good record of past performance. (194 Va. page 96)

\* \* \* \* \* \* \*

"The legislature has stated the rule that when a contractor engages in the construction of any structure, or part thereof, and the cost of the work performed amounts to $20,000 or more, then the public interest is sufficiently involved to justify the imposition of regulations governing the licensing and registration of the contractor. *It is the cost of the work to be done on a given project which determines whether or not the contractor is subject to the provisions of section 54-113 et seq. The reason for the cost limitation is obvious. The legislature has concluded that projects costing less than $20,000 do not sufficiently involve the public welfare to justify the imposition of the statute, whereas those costing $20,000 or more are of sufficient importance to justify regulation.* However, there is nothing in the statute which is designed to work any hardship on the competent and qualified contractor." (194 Va. page 99)

\* \* \* \* \* \* \*

"The appellant was engaged in performing part of the work (furnishing and installing certain electrical equipment), which went into the construction of the outdoor theater. *What it did was just as much a part of the completed project as was the work performed by any other contractor. The total cost of the work performed by the appellant on this one theater project was $34,757.20. Since the cost of the work performed was in excess of $20,000, it necessarily follows that registration under the statute was required.*" (194 Va. page 100) (Italics added.)

In *Rohanna* v. *Vazzana*, 196 Va. 549, 84 S. E. 2d 440, Mr. Justice Whittle, citing *Bowen Electric Company* v. *Foley, supra,* said:

"The chapter of the Code here referred to requires that any person who undertakes *to bid upon or to construct any building or other thing, if the undertaking is to cost twenty thousand dollars or more, secure a State license before engaging in the undertaking.* A failure to comply with the statute precludes a recovery by the contractor on his contract." (Italics added.)

In *Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 86 S. E. 2d 860, where the innocent party sued the contractor for the alleged breach of the latter's contract, we said: "The statute applies 'when the cost of the undertaking \* \* \* is twenty thousand dollars or more.' " (196

Va. page 1159), and later added: "There is nothing immoral or contrary to public policy in a construction contract involving $20,000 or more. Neither does the statute (Code, § 54-113 ff.), either expressly or impliedly, forbid such a contract. It merely prohibits unqualified persons—that is, those who have not registered or taken out the required license—from entering into such an agreement." (196 Va. page 1160, 1161)

The above statement, made under the facts there involved, affords no support to the contention of the plaintiffs here, because the subcontractors here are the unqualified persons and the defendants the innocent persons.

The statement overlooks sections 54-128 and 54-142, which do more than "merely prohibit" unqualified persons from entering into contracts in violation of the statute. Section 54-128 provides that "It shall be unlawful for any person to engage in, or offer to engage in, general contracting or subcontracting in this State, unless he has been licensed and issued a certificate of registration under the provisions of this Chapter." Section 54-142 further provides that anyone guilty of violating the statute shall be deemed guilty of a misdemeanor.

In *Sutton Co., Inc.* v. *Wise Contracting Co., Inc., et al.*, 197 Va. 705, 90 S. E. 2d 805, referring to the purpose of the statute, Mr. Justice Smith said:

"\* \* \* enforcement of the contract is denied the unregistered contractor, not because of the nature of the transaction but as a penalty for failing to comply with the registration statutes, and the other party to the contract who is innocent of any illegal conduct is permitted to enforce the contract. This view is based upon the principle that such innocent party is among the class of persons designed to be protected by such statutes, that he is not *in pari delicto* with the unlicensed party, and is therefore entitled to relief. Or, to state the matter another way, to deny relief to the innocent party in such cases would defeat the purpose of the statute and penalize the person intended to be protected thereby.' *Cohen* case, *supra*, 196 Va., at page 1162."

In *Lasting Products Company* v. *Genovese*, 197 Va. 1, 87 S. E. 2d 811, Chief Justice Hudgins, speaking for the Court, said:

"The general rule is that a contract made in violation of a statute enacted to protect the public against fraud, imposition, or to safeguard the public health or morals is illegal and unenforceable by the guilty party." Cases cited.

When we review the history of § 54-113, we find that the original statute, Acts 1938, Chapter 431, page 969, was amended in 1944, Acts 1944, Chapter 404, page 634, and made to apply to subcontractors as well as general contractors. The definition of subcontractors and general contractors, with respect to their undertakings, was broadened by adding the words "*or part thereof*" after the language "*any* improvement, or structure" and after the phrase "*any* structure or *any undertaking* or improvements." It will be noted that the words "*or any* improvement" are used instead of "*or other* improvement," and that the definition applies when the cost of "*any structure* or *any undertaking* or *improvement or part thereof*" is $20,000 or more. (Italics added.)

Subsequent to the decisions of this Court applying the provisions of the statute, the legislature by Acts 1954, Chapter 428, page 523, amended and reenacted the Act and restricted the definition of general contractors or subcontractors to undertakings in certain specified activities. The amendment deals with special classes of undertakings, and particularizes in each class. The words "railway," and "grading" and the language "or any improvement, or structure, or part thereof" and "any structure, or any undertaking, or improvement, or part thereof" are absent in the revision. If the 1954 amendment indicated any particular intention of the legislature, it was obviously the intention to amend and restrict the coverage and effect of the statute prior thereto as it had been construed by this Court.

The policy of the legislation is not questioned, and the language of § 54-113(2) is, to me, clear and unambiguous, especially so when read in the light of the design and purpose of the statute.

Section 54-113(2) defines a general contractor or subcontractor as any person who undertakes to engage in certain stated activities when "*the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more,* and as any person who engages in the construction of *any structure* or *any undertaking* or *improvements* or *part thereof* above mentioned * * *." (Emphasis added.)

Here, Bles, as general contractor, was awarded a contract for three projects, each of which was an essential and integral part of a Federal Works Agency Project for the "construction" of a "structure," "an undertaking or improvement" constituting "Water Works Improvements for City of Martinsville." His contract was identified on the outside of its front page as follows:

"CONTRACT
for
PROJECTS NOS. 2, 4 & 5
and
SPECIFICATIONS
for
WATER WORKS IMPROVEMENTS
for
CITY OF MARTINSVILLE
Martinsville, Va.

---

Project No. 2—Pipe Lines
Project No. 4—Clearing Reservoir Area
Project No. 5—Earth Fill Dam

Accompanying Drawings
Sheets Nos. C-1, D-1 to D-22 inclusive

---

Federal Works Agency
Project No. VA—44—P—113."

Plaintiffs by a "subcontract thereunder" undertook to perform a part of the "undertakings" of the general contractor which went into the *construction* and completion of a reservoir, according to the specifications in the latter's general contract, for a cost exceeding $20,000. Under those specifications, a safe and sanitary reservoir area, cleared of trees, undergrowth and perishable material, was as essential and necessary in the completed water works improvement project, as the furnishing and installing of electrical fixtures in an outdoor theater, or as an excavation may be for certain buildings. Cf. *Bowen Electric Company* v. *Foley, supra,* and *Sutton Co., Inc.* v. *Wise Contracting Co., Inc., et al., supra.*

The facts are correctly stated in the beginning of the majority opinion. However, it is later stated that the undertaking of the plaintiffs was "personal to them, and it was mere manual labor, the work of cutting and removing trees and brush and nothing more. * * * No construction of any character was involved." This statement and conclusion leave out of consideration plaintiffs' subcontract to perform work which was a constituent *part of the general con-*

*tractor's undertaking to construct* a reservoir in accordance with certain specifications and strict requirements as to sanitary protection.

In support of their opinion, the majority say: First, that "It is the character of a subcontractor's undertaking and not the character of the general contractor's over-all undertaking that determines whether or not the subcontractor is within the terms of the statute." Second, that the "work performed by plaintiffs did not come within the specific things which the statute enumerated in defining contractors." Third, that "Unless what Sellers Brothers contracted to do constitutes a crime under the statute, their contract is valid."

The first ground asserted is in direct contradiction of the language of § 54-113(2), and of our holding in the *Bowen* case. § 54-113(2) provides exactly the same definition for general contractors and subcontractors in the enumerated activities, "when the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more." "It is the cost of the work to be done on a given project which determines whether or not the contractor is subject to the provisions of § 54-113, et seq."

In support of the assertion, that plaintiffs' work did not come within the specific things which the statute enumerated, the majority opinion enters into a dialectic discussion of certain words in the statute, and concluded that those words have no definite or fixed meaning. Thus resort is had to the canons of *noscitur a sociis* and *ejusdem generis*.

Assuming, for the purpose of the argument, that there is some ambiguity in the statute and agreeing that the Act has remedial features, yet imposes restrictions in derogation of the common law, and is, at the same time also penal, and must, therefore, be strictly construed, it must be remembered that a strict construction does not prevent consideration by the Court of the general purpose and design of the legislature.

"The object of interpretation of statutes is to ascertain the meaning of the legislature. Primarily this is to be obtained from the language used. If the language used is plain and unambiguous, and its meaning clear and definite, effect must be given to it regardless of what courts think of its wisdom or policy." *Fairbanks, etc., Co. v. Cape Charles*, 144 Va. 56, 63, 131 S. E. 437.

"The object of judicial interpretation of a statute is to ascertain the intention of the legislature, express and implied, as the intent is

the vital part of the statute." *Miller* v. *State Entomologist*, 146 Va. 175, 188, 135 S. E. 813.

See also *Commonwealth* v. *Werth*, 116 Va. 604, 607, 82 S. E. 695.

In *Tiller* v. *Commonwealth*, 193 Va. 418, 420, 69 S. E. 2d 441, we said:

"In construing a statute the cardinal rule of construction is that the intention of the legislature constitutes the law, and the primary object in the interpretation of a statute is to ascertain that intention. *Anglin* v. *Joyner*, 181 Va. 660, 26 S. E. 2d 58."

"In construing penal statutes, the legislative intent is in most cases, to be found by giving to the words the meaning in which they are used in ordinary speech." *Gates & Son Co.*, v. *Richmond*, 103 Va. 702, 49 S. E. 965. *Tiller* v. *Commonwealth, supra.*

We do not have to justify the policy of the legislature. It is the judicial function to search for and follow the direct legislative intent and adopt that sense of the words used which will attain the results intended by the legislature, being mindful not to enlarge by implication the obvious effect of the statute.

The rule of *ejusdem generis* is not one "of universal application and it is not controlling in all instances. It is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, or an instrumentality for ascertaining the correct meaning of words when there is uncertainty; * * *." However, "it is inapplicable where the legislative intent is clearly expressed." 82 C. J. S., Statutes, § 332 b, pages 662, 663. The rule does not apply where general words follow specific words which exhaust or embrace all objects of their class, nor where the specific words signify subjects greatly different from one another, or of a different class. 50 Am. Jur., Statutes, § 250, pages 247, 248; and 82 C. J. S., Statutes, § 332 b, page 665.

The lexicographers define "structure" as something built or constructed; a building, bridge, dam, framework. Webster's International Dictionary, 2d Ed., page 2501.

The adjective "any" means one or many, an undetermined, unmeasured or unlimited quantity, indicating lack of restriction or limitation.

Had the legislature intended the statute to apply only to those engaged in the particular activities named, there was no need to add the words "or any improvement, or structure," and "any undertaking." It should be presumed that effect was intended to be given each of those words. *Rockingham Bureau* v. *Harrisonburg*, 171 Va. 339,

344, 198 S. E. 908. It is only by treating them as surplusage and meaningless, and by disregarding their connection with the context of the statute and the object of the legislation that the conclusion of the majority can be reached.

The particular undertakings listed in § 54-113(2), Code, 1950, exhaust the class of each specific undertaking. The undertakings in most instances are essentially diverse in character. A "building" differs from a "highway," a "bridge" from a "sewer" or "pipe line," and a "railway" from "grading." Therefore, the general words which follow the enumerated undertakings must be given a meaning outside of the class indicated by the latter; otherwise, the general words would be mere surplusage and void of meaning. When this occurs, the rule does not apply and the general expression must receive its natural and wide meaning.

"The rule of construction limiting the scope or meaning of general words, such as 'other' and 'otherwise' used in connection with definite and specific enumerations, to things of the class or family of those named, has no application when the context manifests intention to give them a more extensive meaning and effect. Also, since it is really a rule of strict construction its severity should be relaxed in the case of statutes of a remedial nature.

"It should also be noted that if the preceding term is general, as well as that which follows, the rule can have no application. Nor does it apply where the specific words signify subjects greatly different from one another, for here the general expression might very consistently add one more variety. In such case, the general term must receive its natural and wide meaning * * *." 17 Michie's Jur., Statutes, Section 62, page 326.

To the same effect see 17 Va. Law Review, pages 511, 514, 515; *Corby Baking Co.* v. *Commonwealth*, 123 Va. 10, 13, 96 S. E. 133.

The work called for under plaintiff's subcontract in itself constituted not only a betterment, a more desirable condition, and thus an improvement, made with reference to the future benefit of the reservoir; but was a part of the undertaking of the general contractor, that is, the construction of a reservoir, a structure under any meaning of the word. The dam was useless for the purpose desired without a clearing for the sanitary reservoir area. What plaintiffs "did was just as much a part of the completed project as was the work performed by any other contractor." *Bowen Electric Company* v. *Foley*, 194 Va. page 100.

Finally, Mr. Justice Miller, in a mild form of sophistic reasoning, makes the assertion that "unless what Sellers Brothers contracted to do constitutes a crime under the statute, their contract is valid." The answer to this is, the validity of the contract is not in question. As Mr. Justice Eggleston said in *Cohen v. Mayflower Corp., supra,* 196 Va. 1160, there is nothing wrong or immoral in the contract. The statute does not expressly or impliedly forbid such a contract. It merely prohibits unqualified persons from entering into such an agreement and thereby denies enforcement.

Nor is there any issue here as to whether Sellers Brothers committed a crime under the statute. There is no provision that the enforcement of such a contract depends upon the guilt or innocence of the contractor. Guilt or innocence of a crime must be determined in a different forum under rules of evidence and procedure different from those in this proceeding.

The issue here, and the sole issue, is clearly stated in the forepart of the majority's opinion. It is, "What effect, if any, did the failure of plaintiffs, trading as Sellers Brothers, to register and qualify as a subcontractor under Chapter 7, Title 54, Code of 1950, have on their right to maintain this section?" Therefore, the test as to the right of Sellers Brothers to enforce their contract is dependent upon whether they were duly licensed and registered under the statute, not whether their contract is valid or invalid, nor whether they were guilty of a crime in entering into the contract. The criminal penalty merely emphasizes the illegality of their action in making the contract. *Massie v. Dudley,* 173 Va. 42, 51, 3 S. E. 2d 176; *Bowen Electric Co. v. Foley, supra,* 194 Va. 92. The statute applies to the innocent and the guilty, to the competent and incompetent, to the responsible and to the irresponsible, in the furtherance of the public welfare. [Whether or not there have been any criminal prosecutions under the statute in the cases which have been cited herein we have not been advised.]

Not having been licensed and registered as required by the statute, plaintiffs' contract was unlawful and therefore unenforceable by them. It also made them subject to prosecution for a conviction of a misdemeanor; but whether or not they were prosecuted, or, if prosecuted, were found guilty or not guilty, we are not told. It was the commission of the unlawful act and not a conviction of the unregistered subcontractors for the misdemeanor which made their contract unenforceable.

The majority opinion cites four cases in which noncompliance by

the contractor was sought to be invoked as the defense to plaintiffs' claim, and say no issue upon the kind of work done arose, for in each instance the work undertaken was construction of one kind or another. That can be true only if excavating dirt for a foundation, as in the *Sutton* case, *supra,* can be considered as different from removing trees, shrubbery, undergrowth and perishable material from an area to provide a sanitary basin for a reservoir. None of the plaintiffs in those cases, nor the plaintiffs in this case, in view of our former decisions, had the temerity to assert that the over-all character of the general contractors' work bore no relation to the status of the subcontractor, nor that it must first be determined that an unqualified contractor is guilty of having committed a misdemeanor under the statutes before an innocent person can rely upon its provisions.

I am unable to accept or comprehend the position of the majority that plaintiffs did not contract for and did not engage in the construction of the reservoir, a part of the waterworks improvement project for Martinsville.

Paraphrasing a statement of the majority: When a subcontractor's undertaking requires that he cut down trees and remove or burn the trunks, boughs, and twigs to prepare a reservoir area under a subcontract from one who has agreed to construct a reservoir, surely the subcontractor has undertaken to perform a part of the construction of the completed project.

Giving Code, § 54-113(2) a fair and reasonable construction, in the light of the manifest intention of the legislature, the object to be attained from the natural import of the words in common and accepted usage, the setting in which they are employed, and the general structure of Chapter 7, Title 54, as a whole, and the decisions of this Court, it is inescapable that plaintiffs' contract was illegal and, therefore, unenforceable by them.

It may well be that the enactment of the 1954 amendment will forthwith remove the necessity for any new or different construction of the statute as it stood prior thereto.

SMITH, J., concurs in this dissent.