239 F.2d 470
 F. N. THOMPSON, Incorporated, McDevitt & Street Company and R. H. Wattinger, trading and doing business as Thompson, Street and Wattinger Company, Appellants,
v.
ANCHOR INVESTMENT COMPANY, a corporation, Appellee.
 No. 7305.
 United States Court of Appeals Fourth Circuit.
 Argued November 29, 1956.
 Decided December 17, 1956.
 
 Edward P. Simpkins, Jr., and Roger T. Williams, Richmond, Va., for appellants.
 Sam B. Witt, Jr., Richmond, Va., for appellee.
 Before SOPER and SOBELOFF, Circuit Judges, and CHESNUT, District Judge.
 SOPER, Circuit Judge.
 
 
 1
 This suit was brought by Anchor Investment Company to recover for certain masonry work it had done as subcontractor in the course of the erection of certain public housing units known as Hillside Court and Creighton Court at Richmond, Virginia. The defendants in the suit were members of a co-partnership consisting of two corporations and one individual, trading as Thompson Street and Wattinger Company, which, as a general contractor, entered into a contract on June 28, 1951, with the Richmond Redevelopment and Housing Authority to construct the buildings for $7,672,300.00 and thereafter, on July 24, 1951, entered into a subcontract with Anchor to do all the masonry work, in accordance with the general conditions and the drawings and specifications of the main contract, for the sum of $1,435,000.00. This sum was paid by Thompson to Anchor at the conclusion of the work. The present suit is based on Anchor's claim that it is entitled to the additional sum of $21,637.50 for the cost of extra labor and material to complete its work, which was made necessary by faulty construction on the part of the main contractor. The case was tried before Court and jury and at the conclusion of the plaintiff's evidence, and again at the end of all the evidence, the defendants moved for a directed verdict, but this motion was denied and a verdict of $10,818.75, one-half of the sum claimed, was rendered against them. Thereafter the defendants moved the Court to set aside the verdict and enter judgment in their favor, but this motion was also overruled and judgment was entered upon the verdict.
 
 
 2
 Two main questions are involved on this appeal: (1) whether the plaintiff was disqualified from maintaining the suit on the ground that before it executed the subcontract and entered upon the performance of the work it had failed to register as a contractor or subcontractor with the State Registration Board for Contractors as required by Chapter 7, Title 54 of the Code of Virginia; and (2) whether there was any evidence to support the plaintiff's claim that the work done was additional to the work covered by the contract. For a better understanding of the controversy these questions will be considered in the inverse order.
 
 
 3
 Under the subcontract Anchor agreed to furnish all materials and perform all the masonry work for all buildings and yard walls in accordance with the general conditions and the plans and specifications of the prime contract. These provided that the exterior walls should be made of cinder block (Solite) covered on the outside by brick. The interior walls were bearing and non-bearing walls and were to be constructed of cinder blocks. It was specified that the exterior walls and the interior bearing walls for the first floor were to be first constructed. The height of these walls was to be 8' from the floor to the ceiling. On top of the first floor walls the main contractor was to lay a 5" concrete slab, which formed the ceiling of the first floor and the floor of the second story. After this slab was laid Anchor was to continue the outside walls to the top of the second floor and Thompson was to construct the second floor ceiling and the roof. The second floor ceiling was to be plastered by another subcontractor prior to placing the partition walls on the second floor.
 
 
 4
 The subcontract also provided that Anchor was to construct the non-bearing partition walls on both floors, and it is with respect to these walls that the controversy relates. The height of these walls was to be 8', covering the distance between the floor and the ceiling slab on the first floor and the distance between the floor and the plastered ceiling of the second floor. The specifications, referring to the cinder blocks, provided that the
 
 
 5
 "Nominal 8-inch height units shall be not less than 7 5/8 inches nor greater than 711/16 inches."
 
 
 6
 The specifications also provided for a mortar joint of 3/8" between the blocks and a similar joint at the bottom and at the top of the walls where they terminated against the floor and ceiling respectively. The drawings graphically depicted the 3/8" joint at the top of the wall where it butted against the ceiling. The plans and specifications did not require that all of the block from floor to ceiling should be nominal 8" block. The expert testimony shows that it was obvious to one who read the specifications and plans understandingly that a wall of twelve cinder blocks of the minimum height of 7 5/8" each with 3/8" mortar joints at the top and bottom of the wall and between the units could not be erected in the 8' space, and that it would therefore be necessary to cut down the size of the topmost block. It was this circumstance that brought about the extra expense for which the plaintiff now sues, and it was the failure of the plaintiff to understand the plans that led to the dispute. This is apparent from the testimony of the superintendent of the plaintiff company who had charge of the erection of the masonry under the subcontract and who testified emphatically and repeatedly that the plans and specifications did not call for a mortar joint between the topmost unit of the wall and ceiling. It thus appears, in the absence of any other explanation, that the plaintiff's claim is without merit.
 
 
 7
 The plaintiff contends, notwithstanding its mistake in reading the plans and specifications, that it should recover on the grounds that (1) the plans called for an impossibility since they required the use of cinder blocks of a minimum height of 7 5/8" and it is now clear that a block of such height could not be used on the topmost course; (2) that the specifications required the main contractor to do such cutting as was necessary in this case, and (3) that the cutting was made necessary by the sagging of the ceilings which the main contractor installed in the houses. We think that none of these grounds is tenable. The evidence shows that in masonry work of this character it not infrequently happens that the builder of a wall must cut the material so as to fit it within the required space. The specification for the use of blocks of not less than 7 5/8" in height was obviously inserted to determine the size of the units to be used in erecting the wall, but to an experienced builder this provision was not inconsistent with the modification of a particular unit to meet the conditions shown on the plans.
 
 
 8
 The second ground on which the plaintiff relies is a provision in the general conditions of the main contract which places upon the contractor the responsibility for the proper fitting together of the work of the various subcontractors and the guarantee to each of them of the dimensions required to fit their work to the surrounding work, and the duty on the part of the contractor to do the cutting and adjusting necessary to make the several parts of the work conform to one another. It is obvious that this provision does not support the plaintiff's contention. It does not require the main contractor to do any of the parts of the work which are covered by the agreements of the subcontractors. It merely means that the main contractor must see to it that the several jobs, when properly done by separate subcontractors, fit together. Since the plaintiff failed to comply with its contract in regard to the erection of the walls, as above demonstrated, the provision of the general conditions of the main contract last referred to has no bearing on the controversy.
 
 
 9
 There was evidence offered by the plaintiff in support of the third contention to the effect that the ceilings installed by the contractor on the first and second floors sagged in certain places so that the topmost unit of the partition walls could not be inserted without cutting. There is strong testimony to the contrary on the part of the defendants, but assuming, as must be done in considering the motions for a directed verdict, that the plaintiff's testimony is true, it does not follow that the sagging was the cause of the expense of cutting the unit. It is obvious, as shown above, that even if the ceilings had been perfectly installed without sagging or bending, the cutting of the topmost units would still have been required, and there is no showing that the expense of cutting the units to accommodate the alleged sagging of the ceilings would have been any greater than that caused by the cutting which was necessary to fit the topmost unit and the mortar bond thereon beneath the ceiling.
 
 
 10
 Aside from the merits the plaintiff is precluded from maintaining the suit because it failed to register with the State Registration Board of Contractors as required by Chapter 7, Title 54 of the Code of Virginia. The statute requires a general contractor or subcontractor who, for a fixed price, undertakes to bid upon or to construct any building, when the cost of the undertaking is $20,000 or more, to register with the Board; and it is made unlawful for any person to engage in, or offer to engage in general contracting or subcontracting in the State unless he has been duly licensed and issued a certificate of registration under the statute. See §§ 54-113 and 54-128. The statute was considered in the leading case of Bowen Elec. Co. v. Foley, 194 Va. 92, 72 S.E.2d 388, in which it was held that the statute is constitutional and that a contractor who enters into such a contract and fails to register cannot recover either the agreed price under the contract or the reasonable value of the work on a quantum meruit basis. See also Cohen v. Mayflower Corp., 196 Va. 1153, 86 S.E.2d 860; Lasting Products Co. v. Genovese, 197 Va. 1, 87 S.E.2d 811; Sutton Co. v. Wise Contracting Co., 197 Va. 705, 90 S.E.2d 805.
 
 
 11
 The plaintiff admits that it could not have recovered the sum of $1,435,000.00 fixed by the subcontract for the masonry work if it had not been paid by the contractor, but seeks to avoid the force and effect of the statute as to the present suit by contending that the extra work for cutting the blocks was not furnished for a fixed price of $20,000.00 or more, but for a sum which the jury has found to be less than $20,000.00, and that the suit was not brought upon the unlawful written subcontract but upon the implied contract which arose when the plaintiff performed and the defendant accepted the extra work involved in cutting the blocks.
 
 
 12
 These contentions will not bear close examination. The gist of the suit, as set out in the complaint and developed in the evidence, was that the main contractor, in carrying out its contractual duty to install the ceilings, was guilty of faulty construction which made it necessary for the plaintiff to incur the extra cost of $21,637.50 in cutting the blocks in order to finish its work. Thus it seems clear that the suit was brought for breach of the subcontract by the main contractor and that the recovery sought is based upon the provisions of the contract as truly as if it were a suit to recover the contract price.
 
 
 13
 If, however, it is deemed that the suit is not based upon the express contract between the parties but upon an implied contract growing out of the circumstances above described, the result will be the same. It is well established that if a suit is not based directly upon an illegal contract, but is so closely associated therewith that the plaintiff must rely upon it to establish his claim, he cannot recover. See Restatement of Contracts §§ 597 and 238; Williston on Contracts, Revd. Ed., Vol. 6 §§ 1752 and 1753.
 
 
 14
 It is plain that the plaintiff cannot recover upon the so-called implied contract in this case without proof of the express contract, which was in violation of the registration statute. It was undoubtedly the obligation of the plaintiff to erect the partition walls from floor to ceiling in accordance with its contract, and the present contention is that the contract did not require it to cut the topmost blocks; but it can sustain this contention only by showing that it was the duty of the main contractor to perform this operation. In short, even if the plaintiff's interpretation of the illegal contract is correct, its claim is so closely connected therewith that it will not support a suit under the Virginia law.
 
 
 15
 The judgment of the District Court will be reversed with directions to enter judgment for the defendants.
 
 
 16
 Reversed and remanded.