# Richmond.

## CHESAPEAKE FERRY COMPANY v. HAMPTON ROADS TRANSPORTATION COMPANY.

### March 18, 1926.

1. FERRIES—*Railroads—Ferry in Connection with a Railroad.*—The general power of the legislature to establish by legislative act a public ferry in connection with a railroad business, cannot be questioned.

2. FERRIES—*Power of Legislature.*—The legislature in Virginia has never surrendered its power over the subject of ferries.

3. CORPORATIONS—*Charter Strictly Construed—Doubt Resolved in Favor of the Public.*—Acts of the legislature granting charters of incorporation are to be strictly construed, and where an ambiguity or doubt exists, arising out of the language employed in the act, such doubt or ambiguity must be resolved in favor of the public.

4. FERRIES—*Suit to Enjoin Rival Ferry—Complainant Must Show Violation of Its Rights.*—In a suit by a corporation operating a ferry to obtain an injunction against defendant seeking to operate a rival ferry, the question for determination is not whether the defendant is doing what it ought not to be doing, but whether it is violating any right conferred upon the complainant by the terms of the act incorporating it. It is incumbent upon the complainant to affirmatively show that it lawfully possesses a right before it can complain of any invasion thereof.

5. STATUTES—*Construction—Act Read as a Whole.*—Courts, in construing an act of the legislature, must gather the legislative intent from the act as a whole.

6. FERRIES—*Injunction Against Establishment of Rival Ferry—Ferry Operating in Connection with a Railroad—Exclusive Rights—Case at Bar.*—In the instant case complainant sought to enjoin defendant from operating a ferry in competition with the ferry operated by complainant. The predecessor of complainant was incorporated as a railroad and a clause in its charter provided that it might operate one or more steamboats or other vessels for the purpose of establishing and maintaining a ferry and might transport passengers, vehicles, freight and other things which in the opinion of the board of directors it might be desirable to convey and transport and might charge and collect reasonable toll or charges. By general law, at the date of the incorporation of complainant's predecessor,

it was provided that certain requirements must be met by the applicant for a ferry franchise, and that the court to whom the application was made should prescribe the rate of ferriage, persons and things. Complainant nowhere explicitly alleged that a schedule of rates and tolls was ever promulgated for the operation of the ferry separate and apart from the operation of the railroad. There was nothing in the bill to indicate that the boats operated by complainant ran at periods other than such periods as connected its boats with the cars of its lessor.

*Held:* That it was the intention of the legislature to confer upon complainant's predecessor the right only to convey and transport passengers, etc., upon the ferry by means of boats in connection with its railroad business, and not separate and apart therefrom; and that it was never intended to confer upon the predecessor in title of complainant the exclusive right to operate a ferry.

7. FERRIES—*Established in Connection with Other Business—Exclusive Rights.*—An express power to establish a ferry to effectuate other powers granted does not confer a right to establish a ferry independent of the exercise of such powers.

8. FERRIES—*Definition—Continuance of a Highway.*—A ferry, both in common and legal parlance, is but the continuance of a highway from one side of the water over which it passes to the other side, or but the substitute for the ordinary bridge, and is for the accommodation of the public generally.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*W. R. L. Taylor* and *Robt. B. Tunstall*, for the appellant.

*Jos. T. Lawless* and *Leon T. Seawell*, for the appellee.

CAMPBELL, J., delivered the opinion of the court.

The appellant filed its bill in equity against the appellee, to obtain an injunction restraining appellee from operating a ferry across the waters of Hampton

Roads, between Willoughby Spit, in the city of Norfolk, and the military reservation of the United States government at Old Point.

On the 3rd day of October, 1925, the circuit court entered a decree sustaining a demurrer interposed by the appellee to the bill, and dismissed the suit at the cost of the appellant. It is this decree which is the subject of appeal.

Taken from the bill filed by appellant, the following case is set forth in the petition for an appeal:

"The Chesapeake Ferry Company is a corporation duly organized and existing under the laws of the State of Virginia, with its principal office in the city of Norfolk, and has charter authority to lease, own and operate ferries on Elizabeth river, Hampton Roads and Chesapeake Bay. One of its lines of public ferries has its seat at the pier of the Virginia Railway and Power Company at Willoughby Spit, Norfolk, Virginia, and plies across the waters of Hampton Roads to the pier owned by the United States government on the military reservation at Old Point Comfort, and returning in the opposite direction by the same route. Its alleged right to this ferry franchise was acquired from the Virginia Railway and Power Company under agreement dated the 25th day of April, 1912, as modified by a supplemental agreement dated March 10, 1913.

"The title of the Virginia Railway and Power Company in the said alleged ferry and ferry franchises have their origin in an act of the General Assembly of the State of Virginia, approved January 18, 1896 (Acts 1895-96, c. 91), entitled, 'An act to incorporate the Norfolk, Willoughby Spit and Old Point Railroad Company.' This act, after providing in its first paragraph for the construction and operation of a railroad from Norfolk to Willoughby Spit, in its second paragraph provides:

"2. 'The said company shall have the right to purchase, lease, charter, hold, equip, furnish and operate one or more steamboats or other vessels for the purpose of establishing and maintaining a ferry between Willoughby Spit or Ocean View, in the county of Norfolk, and Old Point, Hampton or Newport News, Virginia, and may convey and transport passengers, teams, vehicles, freight, and all other things and persons, which, in the opinion of the board of directors, it may be desirable to convey and transport; and the said company shall have the right to charge and collect, by due process of law, such reasonable tolls, rates or charges for such conveyance or transportation as the board of directors may prescribe.'

"The Norfolk, Willoughby Spit and Old Point Railroad Company was duly organized, and acquired the necessary boats, appliances and terminals and exercised the franchise of operating a ferry granted to it by the General Assembly as above set out. All of the rights, powers and franchises of the said Norfolk, Willoughby Spit and Old Point Railroad Company were thereafter acquired by the Old Dominion Electrical Development and Power Company pursuant to the authority vested in it by its act of incorporation passed by the General Assembly of Virginia, and approved March 4, 1898. The name of the Old Dominion Electrical Development and Power Company, pursuant to charter authority, was subsequently changed to the Norfolk and Ocean View Railway Company.

"This company, under its changed name, by an agreement of merger and consolidation, passed into a new company under the name of the Norfolk Railway and Light Company, and thereafter by sundry leases, mergers and consolidations fully set out in the bill, all of the rights and franchises formerly possessed and

exercised by the Norfolk, Willoughby Spit and Old Point Railroad Company, including the right to operate a public ferry, have in the course of years passed to the Virginia Railway and Power Company, under whom the Chesapeake Ferry Company claims, and from 1896 up to the time of the filing of the bill in this suit the franchise of operating a public ferry in accordance with the grant contained in the charter of the Norfolk, Willoughby Spit and Old Point Railroad Company has been continuously exercised, either by the original grantee or its successor in title, and has never been questioned by the State of Virginia or any public subdivision thereof, but on the contrary has been fully recognized by all governmental authorities and expressly ratified and affirmed by the act of the General Assembly of Virginia, approved March 7, 1918, entitled, 'An act to revise, arrange and consolidate into a Code the general statutes of the Commonwealth,' which act became effective on the 13th day of January, 1920; in which the General Assembly of Virginia expressly enacted that every ferry established and not discontinued before the commencement of that Code should continue to be kept.

"The bill further shows that the Hampton Roads Transportation Company is preparing to construct ferry slips at Willoughby Spit within four hundred yards of the seat of the ferry operated by the Chesapeake Ferry Company and is also constructing slips on the military reservation at Old Point with the avowed intention of operating a ferry between its terminal at Willoughby Spit and the terminal at Old Point, without having obtained a franchise or any right or privilege entitling it to operate such a ferry, and in direct competition with petitioner's ferry and in the teeth of the statute (section 2065, Code 1919), prohibiting the

establishment of a ferry within half a mile of petitioner's legally established ferry.

"The bill further avers the inadequacy of petitioner's remedy at law, and seeks injunctive relief against the infringement of its rights and franchises to operate a public ferry by the Hampton Roads Transportation Company."

The ground of demurrer to be considered, and one which we are of opinion is determinative of the cause, is as follows:

"That the act approved January 18, 1896, entitled an act to incorporate the Norfolk, Willoughby Spit and Old Point Railroad Company, shows by its title and context to confer the right only of operating a ferry for the conveyance of such portion of the traveling public as moved over the lines of said railroad company, between Old Point Comfort and Willoughby Spit, and (b) that the terms of the alleged contracts of lease filed as Exhibits A and B with the bill, provide that the plaintiff shall be required only to transport such portion of 'the traveling public moving over the lines of the railroad company' and not the general public."

The bill of complaint does not allege, nor does appellant contend in its brief, that the general law for the establishment of ferries has been complied with.

The foundation upon which the appellant rests its right to injunctive relief is found in the act of January 18, 1896, which is as follows:

"1. Be it enacted by the General Assembly of Virginia, that Charles H. Barritt, H. L. Page, W. A. Barritt, Junior, James Goodwin and Ivor A. Page, and such other persons as may be associated with them in the manner hereinafter provided, shall be, and they are hereby, constituted a body politic and corporate

by the name of the Norfolk, Willoughby Spit and Old Point Railroad Company, and by that name shall have perpetual succession and a common seal, which they may alter and amend at their pleasure, and may sue and be sued, plead and be impleaded, contract and be contracted with, purchase, hold, and grant estates, real and personal, and make ordinances, by-laws, and regulations consistent with the laws of this State and of the United States, for the government of all under their control, and for the management of these estates and the due and orderly conduct of their affairs; and by that name shall have all the powers, rights, and franchises necessary and proper to locate, construct, equip, maintain and operate a railroad of such gauge as they may elect from the city of Norfolk to Willoughby Spit, and from Willoughby Spit to Old Point, Virginia, and from Ocean View to Willoughby Spit, on Chesapeake Bay; and the above named corporators are authorized, either in person, or by agent or agents by them appointed, to open books and receive subscriptions of the capital stock of said Norfolk, Willoughby Spit and Old Point Railroad Company.

"2. The said company shall have the right to purchase, lease, charter, hold, equip, furnish, and operate one or more steam boats or other vessels for the purpose of establishing and maintaining a ferry between Willoughby Spit or Ocean View, in the county of Norfolk, and Old Point, Hampton or Newport News, Virginia, and may convey and transport passengers, teams, vehicles, freight and all other things and persons, which, in the opinion of the board of directors, it may be desirable to convey and transport; and the said company shall have the right to charge and collect, by due process of law, such reasonable tolls, rates, or charges for such conveyance or transportation as the board of directors may prescribe.

"3. The capital stock of said company shall not exceed fifty thousand dollars, to be divided into shares of the par value of one hundred dollars each, each share to be entitled to one vote at all stockholders' meetings, and whenever fifty shares have been subscribed the subscribers may organize the company by electing a board of directors and president, and electing and appointing such other officers as may be necessary for the management of the affairs of the company; and thereupon they shall have and exercise all the general powers and functions of a corporation, and be subject to all the restrictions imposed by the general laws of the State applicable to internal improvement companies, except the same be inconsistent with this act.

"4. The capital stock of said company may be increased from time to time by the board of directors to such amount as they may deem necessary for the interests of the company, not exceeding the maximum capital stock prescribed by this act, and the board of directors shall have power to borrow money and to issue bonds or other evidences of indebtedness therefor, in such sums, payable at such times and places, and bearing such rates of interest, as may be deemed most advantageous to said company, and may secure the same by one or more mortgages or deeds of trust on the road, franchises, income and the real and personal property of the company, or such part or all parts thereof as may be designated in the deeds of trust, mortgage or mortgages.

"5. It shall be lawful for said company to acquire in subscriptions to its capital stock, or by donations or otherwise, lands, property, materials or labor, and to receive subscriptions from other companies, associations or corporations in stock or otherwise, and to make such arrangements as may be agreed upon by

the respective boards of directors of said companies, associations or corporations for the inducement of sale, exchange or consolidation of stock and lands as will facilitate the construction and operation of said road; and the said company may sell, lease, or otherwise dispose of any lands or other property acquired under this section at their pleasure.

"6. The said company may acquire, hold by lease, purchase, condemnation or otherwise, such real estate as may be needed for its purposes, and may build thereon such docks, wharves, warehouses and other structures as may be necessary or proper.

"7. It shall be lawful for said company to consolidate with any other railroad company heretofore incorporated or hereafter to be incorporated in the State of Virginia, and to lease any other railroad or railroads, or the right of way over the same.

"8. The said company, by the acceptance of this charter, hereby agrees to pay all taxes, dues and demands due the State that may hereafter be assessed against it in lawful money of the United States and not in coupons.

"9. The road shall be commenced within two years and be completed within five years from the passage of this act.

"10. This act shall be in force from its passage."

It is the contention of the appellant that the legislative intent, as shown by the language employed, creates in its predecessor in title all the powers, rights, and franchise necessary and proper to locate, construct, equip, maintain and operate a railroad from Willoughby Spit to Old Point Comfort, and also confers upon its predecessor in title the right and franchise to operate one or more steamboats or other vessels, for the purpose of establishing and maintaining a ferry between Willoughby Spit and Old Point.

[1, 2] No one can question the general power of the legislature to establish by legislative act a public ferry in connection with the railroad business. As held by Judge Tucker in *Tuckahoe Canal Co.* v. *Tuckahoe R. R. Co.*, 11 Leigh (38 Va.) 42, 36 Am. Dec. 374, the legislature in this State, in the case of ferries, has never surrendered its power over the subject. Appellee, while conceding this proposition of law to be correct, contends that in construing the act in the instant case, the court cannot say, beyond a reasonable doubt, that it was the purpose of the legislature to grant two distinct franchises in the single act of incorporation.

[3] Acts of the legislature granting charters of incorporation are to be strictly construed, and where an ambiguity or doubt exists, arising out of the language employed in the act, such doubt or ambiguity must be resolved in favor of the public. *Rober* v. *McWhorter*, 77 Va. 219.

[4] The question for determination is not whether the appellee is doing what it ought not to do, but whether it is violating any right conferred upon the appellant by the terms of the act of 1896. It is incumbent upon the appellant to affirmatively show that it lawfully possesses a right before it can complain of any invasion thereof.

Under the general law, as it existed at the date of the incorporation of appellant (Code, 1887), it was provided that certain requirements must be met by the application for a ferry franchise; that the court to whom the application was made should prescribe the number of hands, and the number and kind of boats, to be kept, and the rates of ferriage for persons and things.

While the act of incorporation provided that "the said company shall have the right to charge and collect,

by due process of law, such reasonable rates, or charges, for such conveyance or transportation as the board of directors may prescribe," it was not until application was made, years afterwards, to the State Corporation Commission that ferriage fares to be charged by appellant were prescribed and fixed.

[5, 6] While it is true that the bill of complaint alleges that the Norfolk, Willoughby Spit and Old Point Railroad Company was empowered "to charge and collect reasonable tolls, rates and charges for its services in that regard," it is nowhere explicitly alleged that a schedule of rates or tolls was ever promulgated for the operation of the ferry, separate and apart from the operation of the railroad. Courts, in construing an act of the legislature, must gather the legislative intent from the act as a whole. Thus construing the act incorporating the Norfolk, Willoughby Spit and Old Point Railroad Company, we are of opinion that it was the intention of the legislature to confer upon the company the right only to convey and transport passengers, teams, vehicles, freight, and other things, across Hampton Roads by means of boats in connection with its railroad business, and not separate and apart therefrom. In other words, the act under review is a charter of incorporation of a railway, and was never intended to confer upon the predecessor in title of appellant the exclusive right to operate a ferry between Willoughby Spit, in the city of Norfolk, and the military reservation of the United States government at Old Point.

The first and second sections of the act, instead of endowing the company with dual franchises, to-wit, a railroad and a ferry franchise, are descriptive merely of the route of the railroad.

[7] In 25 C. J., sec. 3, p. 1052, it is said: "An ex-

press power to establish a ferry to effectuate other powers granted, does not confer a right to establish a ferry independent of the exercise of such powers."

In *Darnell* v. *State*, 48 Ark. 321, 3 S. W. 365, it is held: "A right conferred by charter to build a toll road and to establish a ferry as an incident to the road is not a right to establish and maintain a public ferry independently of the road." See 2 Farnham on Water and Water Rights, p. 1228.

There is nothing in the bill to indicate that the boats operated by the appellant ran at periods other than such periods as connected its boats with the cars of its lessor, the Virginia Railway and Power Company.

[8] A ferry, both in common and legal parlance, is but the continuation of a highway from one side of the water over which it passes to the other side, or but the substitute for the ordinary bridge, and is for the accommodation of the public generally. *New York* v. *New England Transfer Co.*, 14 Blatch. 159, Fed. Cases 10, 197 (C. C.). Had the ferry in question been operated for the benefit of the public in general, instead of being operated as a substitute for a railroad bridge, we are inclined to the view that this fact would have been set forth in the bill in clear and unmistakable language. With the exception of the use of the word "ferry" in section 2 of the act of incorporation, it does not appear anywhere in the act. On the other hand, the act fairly bristles with reference to the powers and limitations of the railroad company.

As to the power of an incorporated company to engage in any business other than the purposes for which it was incorporated and as expressive of the legislative intent, section 1070 of the Code of 1887 is in point.

In the leading case on the establishment of ferries

(cited in 1 Elliott on Railroads, sec. 32, and Farnham on Water and Water Rights, p. 1228), of *Fitch* v. *New Haven, &c., R. R. Co.*, 30 Conn. 38: "The legislature chartered a railroad company with power to construct a railroad from New Haven to Stormington, crossing New London harbor by a ferry at New London; the provision as to the ferry being as follows: 'To establish a ferry from the termination of its railroad on the east side of New London harbor to some convenient point on its west side as a part of their railroad or route, to connect the same with said railroad on the west side.' *Held:* That a general ferry was not granted, and the railroad company was enjoined against the use of the ferry for any other purpose than the transportation of passengers and freight of the railroad."

In *Harding* v. *Maverick*, No. 9316 Fed. Cases, 1 Sprague 23, it was contended that the charter of the Eastern Railroad Corporation authorized the company to maintain a ferry between Boston and East Boston, and take toll for travel and purposes not connected with their road. The court, in disposing of this contention, said: "It has been contended that this ferry was, in truth, kept by the Eastern Railroad Company and that they are authorized to maintain it by the first section of their charter. Its language is as follows: 'And said corporation is hereby authorized and empowered to locate, construct and finally complete a railroad from the city of Boston to the boundary line between the Commonwealth of Massachusetts and the State of New Hampshire; or near the line next hereinafter described, beginning at or near the land or wharf of the Lewis Wharf Company; thence by steamboats or other boats over and across the ferry to East Boston, so called; thence, etc.,' locating the road to the

boundary of the Commonwealth. This is merely descriptive of the line of the road. It was to run from a point at or near Lewis Wharf over and across the ferry to East Boston. The ferry is mentioned only to designate the route over which the corporation was (sic) to pass by steamboats, or other boats, for the purpose of a railroad. It certainly is not to be understood that this railroad corporation was authorized to establish and maintain a ferry and take toll for all travel, and for purposes in no wise connected with their road."

There are ten remaining grounds of demurrer relied upon by the appellee, but in view of the disposition made of the cause on the ground of demurrer, quoted *supra*, no good purpose would be served by a discussion of the same.

The decree of the circuit court is plainly right and will be affirmed.

*Affirmed.*