## PUGET SOUND NAV. CO. v. UNITED STATES.

### No. 9073.

Circuit Court of Appeals, Ninth Circuit.

Oct. 30, 1939.

Lawrence Bogle, Cassius E. Gates, and Edward G. Dobrin, all of Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Atty., Gerald Shucklin, Asst. U. S. Atty., and Charles P. Moriarty, Associate Counsel, all of Seattle, Wash. (J. P. Sanderson, U. S. Immigration Service, of Seattle, Wash., on the brief), for the United States.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The case comes to us on an agreed statement of facts, which are relatively simple. The appellant operates several steamships on Puget Sound and adjacent waters—Admiralty Inlet, the Straits of Juan de Fuca, Rosario Strait, and Haro Strait. The cities and islands served by said vessels are Seattle, on the mainland, located on Puget Sound; Port Townsend, on the mainland, located on Admiralty Inlet; Port Angeles, on the mainland, located on the Straits of Juan de Fuca; Victoria, on Vancouver Island, located on the Straits of Juan de Fuca; Bellingham, on the mainland, located on Puget Sound; Anacortes, on the mainland, located on Puget Sound; Sidney, on Vancouver Island; and Lopez Island, Shaw Island, and Orcas, located on Orcas Island, all of the San Juan Island Group. All of the cities and islands are located within the United States of Amer-

ica with the exception of the cities of Victoria and Sidney, which are located in the province of British Columbia, Vancouver Island. The vessels cross waters designated as "high seas." Generally, all of the vessels involved herein carry passengers, vehicles, baggage, mail, merchandise, and freight, and in transporting such merchandise and freight, rates were charged between all parts and way ports to shippers delivering the merchandise and freight for shipment, and collected from either the shipper or consignee. Certain of the vessels did not carry freight between certain ports, and two boats were freighters, operating on irregular routes. Sometime prior to 1931, appellant's boats were partly reconstructed in order to accommodate vehicles on the main or car deck. Appellant's vessels are exempted from "entry" and "clearance" fees, but on arrival are required to report baggage, merchandise, and freight.

The Act of March 2, 1931, 46 Stat. 1467, 8 U.S.C.A. §§ 109a, 109b, provides that extra compensation be paid inspectors and employees of the U. S. Immigration Service who remain on duty or report for duty for overtime services between 5:00 p. m. of one day and 8:00 a. m. of the following day, or Sundays and holidays, to perform duties in connection with the examination and landing of passengers and crews of instrumentalities of transportation arriving in the United States. from a foreign port and fixes the rate of such overtime pay. Section 2 of said Act provides that the said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance arriving in the United States from a foreign port, to the Secretary of Labor, who shall pay the wages to the several immigration officers and employees entitled thereto.

The only ports of entry at which charges have been made for inspection services on carriers running on regular schedule between Canada and the United States and having arrivals at ports of entry on holidays or after 5:00 p. m. and before 8:00 a. m. on other days are: (1) The ports on Puget Sound—to wit, Port Angeles, Anacortes, Bellingham, and Seattle, U.S.A., and Sidney and Victoria, B. C.; (2) ports on the east coast of the United States where vessels ply between Yarmouth, Halifax, Nova Scotia, and St. Johns, New Brunswick, to Boston and New York, U.S.A.

The appellee, as plaintiff, brought action against the appellant to recover the sum of $5,924.74 claimed to have been earned for overtime service by the United States Immigration Service in the Western District of Washington and British Columbia, in connection with operation of defendant's steamers from May 3, 1931, to June 30, 1935, inclusive. The defendant contended that its boats were "international ferries" and so exempt under the statute from claim for such overtime services. The court below decided against the defendant, and it appeals. The sole question to be answered is whether the appellant's vessels are "international ferries."

The facts in this case are singularly similar to those in Canadian Pacific Ry. Co. v. United States, 9 Cir., 73 F.2d 831. Vessels operated by the appellant in that case between Seattle, U.S.A., and Vancouver, B. C., and Victoria, B. C., were held by us not to be "international ferries" and, therefore, not within the exemption granted such type of vessels by the very statute before us. The vessels in each instance operate over waters known as the "high seas" in Puget Sound and the Straits of Juan de Fuca. The appellant's vessels, in the instant case, are smaller than those involved in the Canadian Pacific case; some are of the open double-end type, the elapsed time of voyage generally less and the distance shorter, though, of course, the distance between Seattle and Victoria has not been lessened since writing of the opinion in the Canadian Pacific case, supra.

The appellant in argument suggests that the Canadian Pacific case stretched the rule to its very limit—that any vessel smaller than those operated in that case, running over a shorter course, and in less time must be a ferry. The question involved is not to be solved by any such comparison, but upon the facts presented and the legal principles governing each case.

The court below, in its opinion [24 F.Supp. 431, 432] set forth many definitions of ferry; from these we select a few which we regard as particularly relevant here:

"'A ferry, in its ordinary sense, is but a substitute for a bridge where a bridge is impracticable, and its end and use are the same. Like a toll bridge, it is a franchise created for the use and convenience of the traveling public, as a link in the highway system of the country, and by no means in-

cludes the transportation of goods, wares, and merchandise by themselves, or, in other words, the carrying trade of modern commerce.' People v. San Francisco & Alameda Ry. Co., 35 Cal. 606, 619.

" 'It is impossible in a general way to specify to what distance over intervening waters ferries may be operated. A ferry could not be established between New York and Boston, or New York and Newport or Philadelphia. The distance would be too great, and the business of transporting passengers and freight between such distant places would be that of common carriers upon public waters.' Mayor, etc., of New York v. New Jersey Steamboat Transportation Company, 106 N.Y. 28, 12 N.E. 435, 436.

"In Port Richmond Ferry Co. v. Hudson County, 234 U.S. 317, at page 332, 34 S.Ct. 821, at page 826, 58 L.Ed. 1330, involving a state's power to fix ferriage rates for interstate ferries, the court said: ' * * * The question is still one with respect to a ferry which necessarily implies transportation for a short distance, almost invariably between two points only, and unrelated to other transportation. * * * ' "

■ Because the facts and circumstances of this case are so similar, we are constrained to follow the decision of this court in Canadian Pacific Ry. Co. v. United States, 9 Cir., 73 F.2d 831. The vessels here ply the same waters. Hardly can they be classified within the traditional concept of "ferry"; they travel comparatively long distances, carry merchandise, freight, baggage, and vehicles, as well as passengers and their baggage.

In the Canadian Pacific case at page 834 we said:

"A proviso or exception which restricts the general scope of the act must be strictly construed, and will not be permitted to take any case out of the enacting clause which does not clearly fall within its terms, and the burden of proof is on one claiming the benefit of the proviso. [Cases cited.] The proviso excepts 'vessels on the Great Lakes and connecting waterways.' If the Congress had intended that vessels plying on Puget Sound, engaged in services such as provided by appellant, were to be exempted, it is fair to assume that provision would have been made directly in the act, and not left them to be classified under the uncertain term 'international ferries.' "

The business of appellant might well be classified as that of common carrier upon public waters, rather than that of a ferry company.

The appellant schedules its arrivals and departures to best suit its own convenience and profit (as is its right in the exercise of sound business judgment); if these arrivals and departures are outside of or beyond the established working hours of the employees of the Government service, it is right and proper that appellant should pay the almost insignificant charge set by statute ($5,924.74 in over four years).

Upon the authority of Canadian Pacific Ry. Co. v. United States, 9 Cir., 73 F.2d 831, the judgment of the court below is affirmed.