366 S.E.2d 758

The **BLENNERHASSETT HISTORICAL PARK COMMISSION and Ruble's Sternwheelers, Incorporated**

v.

The **PUBLIC SERVICE COMMISSION OF WEST VIRGINIA, River City Tours, Inc. and R.C. "Heck" Heckert Auto, Inc.**

No. 17993.

Supreme Court of Appeals of West Virginia.

March 4, 1988.

---

William B. Richardson, Jr., Richardson and Richardson, Parkersburg, for The Blennerhassett Historical Park Comm.

George Zivkovich, Parkersburg, for Ruble's Sternwheelers, Inc.

J. Steven Hunter, General Counsel, Public Service Com'n, Charleston, for Public Service Com'n.

Thomas N. Hanna, Charleston, for River City Tours, Inc. and R.C. "Heck" Heckert Auto, Inc.

McHUGH, Chief Justice:

This case is before this Court upon an appeal from a final order of the Public Service Commission of West Virginia (hereinafter "the PSC"). This order affirmed the ruling of the PSC hearing examiner which determined that the PSC had jurisdiction to regulate the safety, service and rates of excursion boats travelling from Point Park in Parkersburg, West Virginia to Blennerhassett Island.

The appellants are the Blennerhassett Historical Park Commission (hereinafter "the BHPC"), a statutorily created entity, and Ruble's Sternwheelers, Inc. (hereinafter "Ruble's").

The appellees are the PSC, River City Tours, Inc. (hereinafter "River City") and R.C. "Heck" Heckert Auto, Inc. (hereinafter "Heckert").

I

Pursuant to *W. Va. Code*, 29-8-1 [1975], the BHPC is responsible for the development of educational, cultural and recreational attractions associated with historical events which occurred on or near Blennerhassett Island. After the PSC staff had advised the BHPC that no certificate of convenience and necessity was required to operate the proposed boat operations from Parkersburg to Blennerhassett Island, the BHPC contracted with Ruble's to provide the service.

Subsequently, two other carriers, namely River City and Heckert, filed a joint application for a certificate of convenience and necessity to operate a charter or ferry boat service from Parkersburg to Blennerhas-

sett Island. The BHPC and Ruble's filed petitions to intervene in the above applications. The parties also filed a motion to dismiss the certificate applications on the premise that the PSC should not regulate this type of charter and ferry boat service. The BHPC and Ruble's then filed a joint application for a certificate of convenience and necessity to operate the transportation services. Heckert then filed a formal complaint against Ruble's alleging that Ruble's had violated state law by engaging in the transportation of passengers in a ferry boat between Parkersburg and the island without first having applied for and obtained a certificate of convenience and necessity from the PSC.

The three certificate cases and the complaint case were consolidated for hearing because each of the cases involved the same issue. Pending a final decision on the matter, all applicants were granted temporary authority to provide service to Blennerhassett Island. The BHPC and Ruble's then filed a petition for reopening and rehearing of the hearing examiner's decision.

There were various complaints and cross-complaints filed by the parties in this case which were made part of the record now before us. River City filed a complaint against BHPC and Ruble's contending that Ruble's had not been adhering to its advertised schedule providing hourly service and had been operating boat service between Parkersburg and the island every half hour. In addition, River City filed a complaint against the BHPC alleging that emergency rules and regulations relating to Blennerhassett Historical Park promulgated by the BHPC usurped the exclusive power of the PSC to regulate public utilities within its jurisdiction.

The BHPC and Ruble's in turn filed a complaint against River City and Heckert alleging that they were not operating pursuant to their advertised schedules. Furthermore, the complainants maintained that River City's unreliable service and mechanical difficulties often resulted in Ruble's towing River City's sternwheeler or transporting its passengers.

After a hearing before the entire PSC, the PSC entered an order concluding that the transportation service in question constituted a "ferry" service and that pursuant to *W. Va. Code*, 24–2–1 [1983], ferry services are within the jurisdiction of the PSC.

## II

The issue before us in this appeal is whether the proposed river transportation service from Parkersburg to Blennerhassett Island is a ferry service and thus subject to the regulatory jurisdiction of the PSC pursuant to *W. Va. Code*, 24–2–1 [1983].

According to *W. Va. Code*, 24–2–1 [1983],[1] the jurisdiction of the PSC expressly extends to the common carriage of passengers or goods by ferry. However, the statute fails to define what constitutes a "ferry" for regulatory purposes.

The appellants primarily argue that the services proposed by the parties in this case consist of excursions or pleasure boat rides, rather than the common carriage of passengers for transportation services. The appellants emphasize that passengers are travelling on the river vessels for entertainment and recreational purposes exclusively, not because they are the sole means of continuing a trip between Parkersburg and Blennerhassett Island. Additionally, the appellants maintain that the PSC should not exercise jurisdiction over the boat service to the island because the legislature has empowered the BHPC with the statutory authority to do so in *W. Va. Code*, 29–8–3(13) [1975].[2]

---

1. The pertinent provisions of *W. Va. Code*, 24–2–1 [1983] state: "The jurisdiction of the commission shall extend to all public utilities in this state, and shall include any utility engaged in any of the following public services: ... toll bridges, wharves, *ferries; ...*" (emphasis added)

2. *W. Va. Code*, 29–8–3(13) [1975] provides:

The [Blennerhassett Historical Park] commission shall be a public corporation and, as such, may:

....

(13) Own or operate, or both, by itself or in conjunction with any other public agency or any private person, firm or corporation, such facilities and equipment as it considers neces-

Conversely, the appellees contend that a "ferry" is essentially a continuation of a highway which is generally utilized to accommodate the public and that the proposed service in this case comports with that definition.

The appellees' definition of what constitutes a "ferry" is consistent with the United States Supreme Court's description in *St. Clair County v. Interstate Sand & Car Transfer Co.,* 192 U.S. 454, 466, 24 S.Ct. 300, 304, 48 L.Ed. 518, 524 (1904), wherein the court stated: " '[A] ferry is a continuation of the highway from one side of the water over which it passes to the other, and is for transportation of passengers or of travellers with their teams and vehicles and such other property as they may carry or have with them.' " (citation omitted) *See also United States v. Puget Sound Nav. Co.,* 24 F.Supp. 431, 432 (W.D.Wash.1938), *aff'd,* 107 F.2d 73 (9th Cir.1939), *cert. denied,* 309 U.S. 668, 60 S.Ct. 608, 84 L.Ed. 1015 (1940); *Mayor of New York v. Starin,* 106 N.Y. 1, 11, 12 N.E. 631, 632 (1887); *Wilmington Shipyard, Inc. v. North Carolina State Highway Commission,* 6 N.C.App. 649, 655, 171 S.E.2d 222, 226 (1969), *cert. denied,* (N.C. Mar. 3, 1970); *Chesapeake Ferry Co. v. Hampton Roads Transportation Co.,* 145 Va. 28, 39, 133 S.E. 561, 564 (1926). Generally, a ferry is regarded as a necessary service by a specially constructed boat to carry passengers and property across rivers or bodies of water from a place on one shore to a point conveniently opposite on the other shore and in continuation of a highway, making connections with a thoroughfare at each terminus. *United States v. Canadian Pac. Ry.,* 4 F.Supp. 851, 853 (W.D.Wash.1933), *aff'd,* 73 F.2d 831 (9th Cir.1934); *United States v. Puget Sound Nav. Co., supra. See also* 36A C.J.S. *Ferries* § 1(1) (1961); 35 Am.Jur.2d *Ferries* § 1 (1967). In addition, it has been recognized that the purpose of a ferry is to accommodate the public. *Chesapeake Ferry Co. v. Hampton Roads Transportation*

*Co., supra; United States v. Puget Sound Nav. Co., supra.*

■ In determining whether the proposed transportation service in the case before us is a ferry service, we consider the following factors: (1) the character of the service rendered; (2) the type of vessels employed; (3) the length of the trip; (4) the place or localities served; (5) the manner in which the trips of the vessels are made; (6) the extent to which service to passengers is emphasized; and (7) the extent to which its use is necessitated by lack of land transportation. *Alaska Steamship Co. v. Federal Maritime Commission,* 399 F.2d 623, 627–28 (9th Cir.1968); 36A C.J.S. *Ferries* § 1(1) (1961).

■ In the case before us, the proposed service serves as a continuation of the highway from Parkersburg to Blennerhassett Island. The vessels used are traditional sternwheelers which are operated pursuant to an advertised schedule of arrivals and departures for the purpose of transporting passengers to and from the island. Service to passengers is clearly emphasized because the proposed service is the only means of reaching Blennerhassett Island. Furthermore, the use of a "ferry" is necessitated by the lack of land transportation between the mainland and Blennerhassett Island.

The legislature, by its inclusion of "ferries" in its enumeration of public services subject to the jurisdiction of the PSC, *W.Va.Code,* 24–2–1 [1983], clearly intended that ferries should be operated as a public utility. As such, ferries should be subject to PSC regulatory powers as to the reasonableness of rates charged as fare and the adequacy of service in the same manner as other common carriers.

The appellants' contention that the BHPC has been vested with the statutory authority in *W.Va.Code,* 29–8–3(13) [1975] to regulate the proposed service is not wholly without merit. However, it is the

sary or convenient for the implementation of its duties under this article. Without limiting the generality of the foregoing, such facilities and equipment may include boats, docks, and

amphitheatre, parking facilities, the reconstructed Blennerhassett mansion and other buildings.

opinion of this Court that had the legislature intended to allow the BHPC to control the transportation service in the case before us, it should have been more specific and explicit. *See* note 2, *supra.*

Moreover, this Court has consistently recognized that where the meaning of a statute is unclear, the construction placed on it by the administrative agency charged with its enforcement is entitled to great weight unless clearly erroneous. *Wilson v. Hix,* 136 W.Va. 59, 68, 65 S.E.2d 717, 723–24 (1951). *See also DePond v. Gainer,* 177 W.Va. 173, 190, 351 S.E.2d 358, 375–76 (1986) (collecting cases).

Based upon the foregoing, we hold that the river transportation service on the Ohio River from Point Park in Parkersburg, West Virginia, to Blennerhassett Island is

a ferry service and, pursuant to *W.Va. Code,* 24–2–1 [1983], is a public utility subject to the regulatory jurisdiction of the Public Service Commission.[3] Accordingly, the PSC may assert its authority and require parties desiring to engage in this public service to obtain a certificate of public convenience and necessity pursuant to *W.Va.Code,* 24A–2–5 [1980].

For the foregoing reasons, the decision of the PSC is affirmed.

Affirmed.

---

**3.** At least one of the appellees in the case before us also offers a charter boat service to the island. We conclude that this charter service basically operates as an extension of the appellee's ferry utility and should be accordingly subjected to the PSC's regulatory jurisdiction.