# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**LEWIS COUNTY BOARD OF EDUCATION,**
Respondent Below, Petitioner

vs.) No. 14-0521 (Kanawha County 13-AA-142)

**TONYA R. BOHAN,**
Petitioner Below, Respondent

**FILED**

**April 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

This employee grievance resulted from a perceived defect in the manner of assigning substitute work opportunities. The respondent herein, Tonya R. Bohan ("Ms. Bohan"), through counsel, John Everett Roush, appealed an adverse ruling from the West Virginia Public Employees Grievance Board ("Grievance Board") to the Circuit Court of Kanawha County. In its final order entered April 11, 2014, the circuit court reversed the Grievance Board. In so doing, the circuit court found that a cancelled work assignment does not constitute a work opportunity for a substitute service employee, awarded back pay to Ms. Bohan, and further, directed the petitioner herein, the Lewis County Board of Education ("BOE") to adopt a specific procedure for future substitute assignments. The BOE, through counsel, Jason S. Long and Denise M. Spatafore, filed the current appeal with this Court.

Based upon the parties' written briefs and oral arguments, the appendix record designated for our consideration, and the pertinent authorities, we find that the circuit court's decision was in error and, accordingly, it is reversed. This case presents no new or significant questions of law, and satisfies the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure. Therefore, it is properly disposed of through this memorandum decision.

The facts of this case are uncontested. Ms. Bohan is employed as a substitute secretary[1] with the BOE. As such, Ms. Bohan's name is included, in order of seniority, on a list of substitute secretaries available for temporary work assignments in the event that a full-time secretary is absent. Generally, when the BOE needs a substitute, it utilizes an automated callout system. The system allows an employee to enter an absence via computer, which prompts the system to automatically call substitute employees within the applicable

---

[1]Ms. Bohan also is employed as a substitute aide and is included in the separate rotation list of that job classification.

job category to serve during the absence of the employee. Substitute employees' names are programmed into the callout system in a seniority-based order, with the most senior employee being listed and contacted first. If the first person called either declines the assignment or does not answer the phone, the next person in the rotation is called. This process is continued until a substitute accepts the appointment. When the need for a temporary secretary arises again, the callout system begins where it ended with the prior assignment, calling the next person in the rotation. When the bottom of the list is reached, the process starts over at the top of the list.

Specific to this case, during the summer of 2012, a full-time school secretary entered an absence into the callout system and requested a substitute by mistake.[2] Therefore, even though a substitute was not needed to fill the secretary's absence, the callout system began calling substitute secretaries and continued until Ms. Bohan received the call and accepted the assignment. Because substitutes are not normally utilized in school secretary positions during the summer, Ms. Bohan suspected the call had been a mistake. She confirmed the same with the BOE's central office the next morning. The mistaken job was suspended, and Ms. Bohan did not work or receive pay for the cancelled assignment.

Because the callout system had registered Ms. Bohan's acceptance of the assignment that, subsequently, was cancelled, the next time that a substitute secretary was needed, the system started the calls with the next person on the list after Ms. Bohan. Another, less senior, secretary received the call and worked from August 14, 2012, to August 24, 2012, an opportunity that Ms. Bohan feels should have been offered to her instead. When Ms. Bohan was not offered the next assignment, she filed a grievance with the Grievance Board pursuant to W. Va. Code § 6C-2-1, *et seq.* In her grievance, Ms. Bohan alleged that her acceptance of the mistaken assignment, which was later cancelled, should not have caused her to "lose her turn" in the rotation. Ms. Bohan requested compensation for lost wages with interest.

Ms. Bohan's initial grievance was denied on October 2, 2012. She appealed the denial to level II, which also was denied. An appeal by Ms. Bohan followed to level III, and a hearing was held on July 19, 2013. The Grievance Board denied Ms. Bohan's requested relief, and held that, so long as substitutes are called in order of seniority and are provided the opportunity to perform similar assignments, a board of education has fulfilled

---

[2]Although the full-time secretary was going to be absent and correctly entered such information in the system, a substitute was not needed because the absence occurred during the summer. Thus, it was error on the part of the full-time secretary to indicate in the system that a substitute would be needed.

2

its obligations under the applicable statute, W. Va. Code § 18A-4-15 (2007) (Repl. Vol. 2012). Thereafter, Ms. Bohan appealed to the Circuit Court of Kanawha County. By order entered April 11, 2014, the circuit court reversed the Grievance Board's decision, ordered the BOE to pay to Ms. Bohan the sum of three days' pay, and directed that the BOE implement a future policy that allows for a substitute to be offered the next assignment when an offer is cancelled within a job category. The BOE appeals the circuit court's order.

This Court examines decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the Grievance Board. "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board . . . based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, in part, *Randolph Cnty Bd. of Educ. v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989). Accordingly, "[w]e must uphold any of the [Grievance Board's] factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. . . . We review *de novo* the conclusions of law and application of law to the facts." *Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 301, 465 S.E.2d 399, 403 (1995). Further, this case requires application of a statute. In that regard, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Mindful of these applicable principles, we now consider the substantive issues presented herein.

On appeal to this Court, the BOE sets forth two arguments: the circuit court erred in ruling that the BOE's procedure for offering assignments and providing work opportunities to substitute service personnel violated W. Va. Code § 18A-4-15; and the circuit court abused its discretion in ordering the BOE to adopt a specific procedure for handling future substitute assignment cancellations. Our resolution of the first assignment of error obviates the need to review the second assertion.

We must determine whether the BOE's procedure for offering assignments and providing work opportunities to substitute service personnel was in violation of the provisions of W. Va. Code § 18A-4-15. The BOE contends that, in the absence of a specific statutory mandate or evidence of an unreasonable application by the BOE, its actions were not contrary to the applicable law. Conversely, Ms. Bohan asserts that a callout procedure that places a substitute at the bottom of the rotation list, even when the substitute assignment is cancelled, does not comply with the requirements of W. Va. Code § 18A-4-15.

At the outset, we are reminded that "[s]chool personnel regulations and laws are to be strictly construed in favor of the employee." Syl. pt. 1, *Morgan v. Pizzino*, 163 W. Va. 454, 256 S.E.2d 592 (1979). The relevant portion of the statute, W. Va. Code § 18A-

3

4-15, provides as follows:

> (a) The county board shall employ and the county superintendent, subject to the approval of the county board, shall assign substitute service personnel on the basis of seniority to perform any of the following duties:
>
> (1) To fill the temporary absence of another service employee;
>
> . . . .
>
> (b) Service personnel substitutes shall be assigned in the following manner:
>
> (1) The substitute with the greatest length of service time in the vacant category of employment has priority in accepting the assignment throughout the period of the regular service person's absence or until the vacancy is filled on a regular basis pursuant to section eight-b of this article. Length of service time is calculated from the date a substitute service person begins assigned duties as a substitute in a particular category of employment.
>
> (2) All service personnel substitutes are employed on a rotating basis according to their lengths of service time until each substitute has had an opportunity to perform similar assignments.

The applicable statute sets forth that substitutes shall be employed on a rotating basis in order of seniority. Neither party contests that the procedure in place in the present case meets this criteria: Ms. Bohan was placed on the appropriate list of substitutes, in the proper rotation order given her length of time of seniority.

It is in what constitutes an "opportunity" that the circuit court and the grievance board differ in their rulings. The order by the Grievance Board found that,

> [w]hile the statute cited above states that each substitute is to have "an opportunity to perform similar assignments," it does not make clear whether an assignment accepted by the substitute that is subsequently canceled before the assignment is performed

4

represents "an opportunity to perform," and the parties did not present argument on this language.

Pursuant to the grievance statute, the circuit court may reverse, vacate, or modify the grievance board's decision, or it may remand for additional proceedings, but only when the decision is contrary to law, clearly wrong, an abuse of discretion, or arbitrary and capricious. *See generally Martin v. Barbour Cnty Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). However, upon appeal to the circuit court, the

> court h[eld] that a cancelled assignment does not constitute an opportunity for a substitute service employee in a particular rotation within the meaning of the statute. Hence, when a substitute service employee accepts an offer to fill in the [sic] for an absent employee and that offer is rescinded or canceled, the substitute employee is entitled to be offered the next substitute assignment available in his or her classification title.

The statute does not define the meaning of the word "opportunity." Thus, we resort to our well-settled law that, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled, in part, on other grounds by Lee-Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982). The word "opportunity" is defined as a "[s]ituation in which the commitment of resources may lead to unforeseen gains, but containing an element of risk." *Opportunity Definition,* TheLawDictionary.com, http://thelawdictionary.org/opportunity (2d ed. last visited March 16, 2015). An additional definition has been stated as "[t]he fact that the alleged doer of an act was present at the time and place of the act." *Black's Law Dictionary* 1267 (10th ed. 2014).

In the present case, all substitutes had the same opportunity to be called for a particular job. The appropriate personnel were listed appropriately, in order of seniority, and were called in a rotating fashion. The error was mechanical, with the callout system. Other listed substitutes had been on the adverse end of a mechanical error in the past, just as Ms. Bohan was in the present case. Further, there was evidence that Ms. Bohan had benefitted in the past from similar mechanical errors, receiving a work assignment earlier than she would have in normal circumstances. Ms. Bohan was called almost daily for substitute secretary assignments, declining many of those jobs and simply not answering the call for numerous others. Most importantly, she received assignments similar to the one which was the subject of her grievance. While there is always the risk of an unfortunate mechanical or

5

operator error with a computerized system such as the callout system, the benefits and speed of the system far outweighed the potential errors.[3]  Therefore, Ms. Bohan's "opportunity" to be called for work, with its inherent risks and benefits, was the same as the opportunity of the others on the list.

The Legislature chose not to dictate specific procedures for boards of education when offering work and assigning substitutes, beyond requiring a seniority-based rotation. Our "primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).  In cases involving underlying agency determinations, we have typically found that deference should be afforded to the officer and/or agency charged with statutory implementation.

> As we noted in Syllabus Point 7, in part, of *Lincoln County Board of Education v. Adkins*, 188 W. Va. 430, 424 S.E.2d 775 (1992):  """"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous."""  (Citations omitted).  *See also* Syl. pt. 2, *West Va. Dept. of Health and Human Resources/Welch Emergency Hosp. v. Blankenship*, 189 W. Va. 342, 431 S.E.2d 681 (1993); *Boley v. Miller*, 187 W. Va. 242, 418 S.E.2d 352 (1992); *Blennerhassett Historical Park Comm'n v. Public Serv. Comm'n of W. Va.*, 179 W. Va. 250, 366 S.E.2d 758 (1988). . . .

---

[3]We find significant the BOE's explanation that the speed and efficiency of the callout system precluded any manipulation of the callout list once a mistake was discovered. For example, on the same date, there may be call-outs for multiple opportunities within the same job classification.  Thus, the system may fill multiple positions within the same job class on the same day.  Further, many substitutes were listed in more than one job classification, just as Ms. Bohan had been, and continues to be, employed as both a substitute secretary and a substitute aide.  Therefore, substitutes may receive a callout for an opportunity in both classifications.  The inherent risk of a possible error in the callout system was far outweighed by the benefits created by the speed and efficiency with which the system filled multiple openings across several categories of job classifications.  While we do not downplay the unfortunate effects of the present error on one opportunity for Ms. Bohan, and our decision does not alleviate the BOE's need to anticipate and prevent further errors, the use of the callout system likely provides more job opportunities for Ms. Bohan, and other substitutes alike, than they would have received otherwise.

*Martin v. Randolph Cnty Bd. of Educ.*, 195 W. Va. 297, 313, 465 S.E.2d 399, 415 (1995). The clear legislative objective is to provide a system whereby substitutes are offered assignments on a rotating basis, so that all substitutes will eventually have the opportunity to perform the various types of assignments available. The BOE's practice complies with this mandate and effectively accomplishes the statutory intent. The BOE's implementation of the mandates, and the Grievance Board's ruling regarding the same, are entitled to deference as they are the entities charged with implementing and interpreting the applicable statute. The circuit court's finding that the canceled job was a missed opportunity in violation of the statute was in error and is, accordingly, reversed. Further, the circuit court's mandate regarding the future handling of similar cases is improper as it was based on the erroneous proposition that the BOE's callout process violated the statute in the case of a cancelled job assignment.[4]

For the foregoing reasons, we reverse the April 11, 2014, order by the Circuit Court of Kanawha County.

Reversed.

**ISSUED: April 9, 2015**

**CONCURRED IN BY:**

**Acting Chief Justice Menis E. Ketchum**
**Justice Robin Jean Davis**
**Justice Brent D. Benjamin**

**DISQUALIFIED**:

**Chief Justice Margaret L. Workman**

**DISSENTING AND WRITING SEPARATELY:**

**Justice Allen H. Loughry II**

---

[4]Our decision does not reach the merits of the circuit court's authority to set forth policy and procedures for the BOE and is not intended to limit further exploration of the issue should the proper case present itself in the future. However, we note, generally, that "the grievance board, the circuit court and this Court simply do not have the authority to substitute our management philosophy for that of the agency in this instance." *Skaff v. Pridemore*, 200 W. Va. 700, 709, 490 S.E.2d 787, 796 (1997).

LOUGHRY, Justice, dissenting:

I am shocked by the majority's nonsensical analysis and plainly erroneous decision in this case. Haughtily characterizing the substitution assignment that Ms. Bohan received as "an unfortunate mechanical or operator error," the majority finds that it was entirely acceptable for the BOE to then *penalize* Ms. Bohan for the BOE's "unfortunate" error by making her forego nine days of pay and placing her at the bottom of the substitution rotation list. It is not too much to ask that county boards of education across this State treat their employees fairly, and when mistakes invariably do occur, such as in this case, to make it right. Decisions like these can do nothing more than cause hard-working West Virginians to question whether this Court has even the slightest comprehension as to their daily struggles to maintain hard-won employment opportunities and vitally necessary income. I therefore adamantly dissent from the majority's decision in this case.

The majority's convoluted analysis examines the definition of the word "opportunity" as used in West Virginia Code §18A-4-15(b)(2) (2012), the statute that directs county boards of education to assign substitute service personnel on the basis of seniority to fill temporary absences of other service employees. The statute expressly provides that substitutes are to be employed on a rotating basis according to their lengths of service "until each substitute has had an *opportunity to perform similar assignments*." *Id.* (emphasis added); *see also* W. Va. Code §18A-4-15(a) ("The county board shall employ and the county superintendent, subject to the approval of the county board, *shall assign substitute service personnel* on the basis of seniority *to perform* any of the following duties . . . ." (emphasis added)). The majority bizarrely concludes that the substitutes all had the same "opportunity to be called" for a particular job and therefore the statute was not violated. Obviously, the statute does not require Ms. Bohan to have the opportunity to receive a phone call; rather, it requires her to have the *opportunity to perform* the assignment. Clearly, she had no such opportunity because when she inquired as to the whether the substitution assignment was a mistake, she was told by the BOE that it was, in fact, an error and that the assignment was cancelled. She was then kicked to the bottom of the rotation because she had the industriousness to pick up the phone and accept a job that, unbeknownst to her but well-known to the BOE, did not exist.

The majority's twisted analysis does not end there. The majority seizes upon evidence that a similar error occurred approximately one month prior to the error at issue in this case and concludes that because Ms. Bohan unwittingly *benefitted* from the prior mistake, she has no basis to seek redress for the BOE's actions when she was the victim of the same mistake. This is flatly absurd. The mere absence of a complaint by a prior victim of such a mistake does not mean that Ms. Bohan, the unknowing beneficiary of that mistake,

8

has no right to grieve the BOE's actions.[5]

Moreover, allowing the call out system to continue to operate in such a manner that results in substitutes losing their place in the rotation–without ever having the opportunity to perform an assignment–not only blatantly violates West Virginia Code § 18A-4-15, but is just patently unfair to all of the BOE's substitute employees. The BOE's own witness at the level three grievance hearing testified that he was able to prevent this type of mistake from happening again. In that regard, the county office administrator testified during the grievance hearing that when he became aware that Ms. Bohan had been given an assignment by mistake, he "locked the system" so that the same mistake would not be made again that summer. He further explained, "What I've done, I've went [sic] in and said do not call any substitute secretary in the summer." Both the BOE and the majority of this Court fail to recognize that while these types of mistakes may in fact happen with automated systems, they are easily remedied. In this instance, if the BOE, upon learning that Ms. Bohan had been mistakenly charged with having received an assignment, had allowed her to work the next available assignment, this case would not exist. If, however, such mistakes are not so easily remedied, then the BOE should promptly investigate differing technology or protocols that will allow it to treat its employees fairly rather than claiming to be some sort of technological prisoner of the automated system that does not enable it to correct mistakes.

Ironically, the majority paid lip service to the well-established premise that "[s]chool personnel regulations and laws are to be strictly construed in favor of the *employee*." Syl. Pt. 1, *Morgan v. Pizzino*, 163 W.Va. 454, 256 S.E.2d 592 (1979) (emphasis added). Such a construction would lead any reasonable person to the conclusion that Ms. Bohan never received her "opportunity to perform" the assignment because it was cancelled, through no fault of her own. For proper resolution, this case requires not the skilled hand of a seasoned jurist or one well-versed in the occasionally byzantine state employee grievance processes. Rather, any lay person on the street would easily and readily conclude that Ms. Bohan was unfairly penalized for a mistake of the BOE's making and that even a child's understanding of basic fairness requires her to be made whole.

The West Virginia worker deserves more thoughtful and reasonable consideration of their grievances than the majority afforded Ms. Bohan. While nine days wages may seem inconsequential to the majority and therefore easily discarded as "unfortunate," I am stunned by its casual dispensation of the circuit court's reasonable and

---

[5]It is fairly obvious that the other substitute employee who was the victim of a similar mistake was undoubtedly unaware of the fact that her name fell to the bottom of the list after the assignment she accepted was cancelled.

9

entirely correct analysis.  I am likewise troubled that the majority recognizes the need to camouflage its tortured "analysis" in a memorandum decision, but makes no better effort to justify its conclusion.  Accordingly, I respectfully dissent from the majority's decision in this case.